BENJAMIN F. ALEY et al., Minors, by Next Friend, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Division One, April 13, 1908.

1. **NEXT FRIEND: Relative.** No discouragement should be thrown in the way of persons bona-fide suing as next friends, but no undue facility should be given to mere volunteers. Nearness of kinship, such as an uncle of the minors' or other near relative, whose business capacity and character are unblemished, is an element to be considered in such appointment.

2. ———: **Non-resident: No Statutory Inhibition.** The fact that the statute requires administrators, curators, officers, bondsmen and certain other persons to be residents, while it is silent as to the residence of a next friend, emphasizes the fact that in the constitutional and legislative mind residence in this State is not necessary to enable a next friend to maintain a suit here.

3. ———: ———: **To Recover Damages.** A resident of Kansas can maintain suit in this State on behalf of his nephews and nieces to recover statutory damages for the wrongful killing in this State of their parents while passengers on a railroad train being operated in this State.

4. ———: ———: **Bond: Option.** The appointment of a non-resident to act as next friend for the beneficial minors in the suit is not invalid because a bond was not exacted from him to properly account to the minors for the money recovered by the litigation. The court or officer may require such a bond before the appointment is made, but is not compelled to do so. Under the statute each has a discretion in the matter. And the court may require such a bond at any stage of the proceeding for the protection of the minors, but it is no concern of the defendant whether or not such bond is given or required.

5. **DAMAGES: Death of Parents: Premature Suit by Minors: Within Six Months.** Where both father and mother were killed in the same railroad accident, a suit brought by the minor children through their next friend for statutory damages within six months is not premature, although the petition does not allege which was killed first. The language of the statute, in reserving the action to the surviving parent for six months,

Aley v. Railroad.

presupposes that one parent is *in esse* where the other is killed, and if both were killed there is no reason why the minors should wait six months to bring suit.

6. ———: **Death of Both Parents: Survivorship.** Where two trains collided and plaintiffs' parents who were riding side by side as passengers in a car were found dead after the accident, he on the floor and she in her chair, the presumption is, if any is to be indulged, that their deaths were instantaneous and therefore simultaneous. But it is not material which died first, when the defendant railroad company is sued by their children for statutory damages.

7. ———: ———: **Pleading: One Count: One Verdict for $10,000: Waiver.** Where the statute provided a penalty by way of compensation to the minor children in the sum of $5,000 for each parent, and where the two causes of action arose out of one injury, namely, the simultaneous wrongful death of both parents, it is not a fatal defect to commingle these two causes of action in one count of the petition, nor to allow a judgment under that count for $10,000 for the death of both parents. It would have been better pleading to have stated in separate counts the facts essential to recover for the death of each parent; but it is assumed that it was proper to sue for the death of both parents in one suit, and as the allegations as found in the one count are not antagonistic, inconsistent or self-destroying, the defect of commingling the two causes was waived by answer. [Distinguishing Casey v. Railroad, 205 Mo. 721, and Casey v. Railroad, 116 Mo. App. 235.]

8. ———: ———: ———: ———: **Motion to Elect: Instruction.** And having answered over, defendant's motion to require plaintiffs to elect upon which cause of action they will proceed, filed at the beginning of the trial, and its instruction telling the jury that the plaintiffs could recover only $5,000, came too late, and were properly overruled.

Appeal from Johnson Circuit Court.—*Hon. N. M. Bradley*, Judge.

Affirmed.

*Martin L. Clardy* and *R. T. Railey* for appellant.

(1) As J. W. Aley was a non-resident of Missouri, the clerk had no legal right to appoint him as next friend, nor can he legally prosecute this suit, and

especially on account of having given no bond as required by section 554, Revised Statutes 1899. (2) At common law, a personal right of action died with the person. If respondents are entitled to recover on account of the death of Tilghman H. Aley and Alice Aley, his wife, it is by virtue of a transmitted right, given by section 2864, Revised Statutes 1899. Bates v. Sylvester, 104 S. W. 74; Strode v. Railroad, 197 Mo. 626; Hennessy v. Brewing Co., 145 Mo. 111; Proctor v. Railroad, 64 Mo. 119. (3) There being no right of action at common law, as heretofore shown, if one exists, it is by virtue of a transmitted right conferred by section 2864, Revised Statutes 1899. The Legislature in transmitting this right, reserved to itself the exclusive power of naming those who could maintain the action; of fixing the time in which each could sue; and likewise had the power to fix the forfeiture or penalty of any one count at $5000. The respondent's right of action—if any exists—is founded upon said section 2864. Under said section, no right of action is given for $10,000 in a single count or otherwise. If you can sue for and recover $10,000 under said section, in a single count, then why can you not sue for $4,500 under the same section? This court in a recent opinion has conclusively settled the last proposition in the negative. Casey v. Railroad, 205 Mo. 721; Casey v. Railroad, 116 Mo. App. 235; Raisor v. Railroad, 74 N. E. 69; DeBoth v. R. H. C. & M. Co., 141 Mo. 497.

*Jackson & Noble* and *Charles E. Morrow* for respondents.

(1) The statute does not require a next friend to be a resident of this State. R. S. 1899, sec. 551. Neither does the next friend have to give a bond that he will account to the infant unless required by the court or officers to whom application for such appointment shall be made. R. S. 1899, sec. 554. Even if the next

friend appointed were an improper person, after ver-
dict in favor of the infants, it is no ground for reversal
in the appellate court. Ralston v. Lohee, 8 Iowa 17;
Story v. Dayton, 22 Hun 450; Ward v. Lowndes, 96
N. C. 367. (2) There was but one wrong. A single
act, a single wrong, gives rise to but one cause of ac-
tion, whether or not the act infringes upon different
rights or causes different injuries. The entire injury
resulting from one negligent act constitutes but one
cause of action, however numerous the items of dam-
age may be. Morgan v. Railroad, 111 Mo. App. 727;
Lamb v. Railroad, 33 Mo. App. 489; Steiglider v. Rail-
road, 38 Mo. App. 511; Stickford v. St. Louis, 75 Mo.
309, 7 Mo. App. 217; Peake v. Railroad, 26 Fed. 495;
Railroad v. Chester, 57 Ind. 297; Perry v. Dickerson,
85 N. Y. 347; King v. Railroad, 50 L. R. A. 161; 1
Ency. Pl. & Pr., 159. (3) Even if we concede that the
statute is wholly penal and for that reason the death of
the father and mother constituted separate causes of
action, yet, on this theory, the third count upon which
judgment was taken states two causes of action instead
of failing to state any. It asks for $10,000, two pen-
alties. It is one thing not to sue for even one penalty
—$4,500, as in the Casey case—and quite a different
thing to sue for two penalties—$10,000, as here. The
petition states facts showing two deaths by reason of
defendant's negligence. It may be that it states two
causes of action, but surely it cannot be said that it
fails to state any. The prayer of the petition is no
part of the statement of the cause of action. Emmert
v. Meyer, 65 Mo. App. 609. Even when two causes
of action are stated in two counts, one prayer for re-
lief is sufficient. Briggs v. Railroad, 82 Mo. 37. The
defendant has filed its answer in this case, and any
relief embraced within the issue could be given. Bliss
on Code Pleadings, sec. 161. The judgment in this

case was not for a greater sum than that demanded in the petition. Nor can it be said that it was not consistent with the case made by plaintiff or that it was not embraced within the issue. Sharkey v. McDermott, 91 Mo. 657; State to use v. Adler, 97 Mo. 420; Hicks v. Jackson, 85 Mo. 283. (4) At most there was improperly mingled in one count two causes of action, consistent with each other, which might have been properly united in the same petition. This error was waived by pleading to the merits and going to trial. The motion to require plaintiff to elect after all the evidence was in on both sides was too late. White v. Railroad, 202 Mo. 560; Jordan v. Railroad, 202 Mo. l. c. 427; Paddock v. Somes, 102 Mo. 235; Christal v. Craig, 80 Mo. 371; Steveson v. Judy, 49 Mo. 227; Otis v. Bank, 35 Mo. 128; Murphy v. Railroad, 96 Mo. App. 272; R. S. 1899, sec. 602. (5) There is no legal presumption that either Mr. or Mrs. Aley survived the other. Whether either survived the other is a fact to be determined from the evidence like any other fact. United States Casualty Co. v. Kacer, 169 Mo. 301; Supreme Council, etc., v. Kacer, 96 Mo. App. 93; 13 Cyc. 308. The court upon ample evidence in this case found that both were killed at the same time and that neither survived the other. This finding precludes the defendant on that question in this court. (6) We do not think it necessary, in order to decide this case, to determine whether the right given by the statute is a transmitted right or a new cause of action. But as appellant seems to rely upon the doctrine of transmitted right, we contend that this doctrine is a mere fiction. The deceased never had a right to sue for his own death, neither did his representatives. Then how could a right which never existed be transmitted? Surely deceased never had a right to sue for a penalty for his own death. If the statute is penal as claimed, it without doubt creates a new cause of action. If it is

compensatory the action is also a new right. The pain and suffering of the deceased prior to his death is no part of the injury. It is the loss to the relatives mentioned in the statute. Unless this is true an instantaneous death would not be actionable. Behen v. Railroad, 186 Mo. 430; Meekin v. Railroad, 164 N. Y. 145; Martin v. Railroad, 151 U. S. 695; Re Estate of Mayo, 60 S. C. 401; Matz v. Railroad, 85 Fed. 180; Hulbert v. Topeka, 34 Fed. 510; Byron v. Railroad, 102 Wis. 137; Railroad v. Barron, 72 U. S. 90; 3 Sutherland on Damages, p. 282.

LAMM, J.—On December 20th, 1904, suit was brought in the Johnson Circuit Court for the death of Tilghman H. and Alice Aley, the father and mother of the minor plaintiffs, Benjamin F., Ruby, Howard and Mary Aley. The petition was in three counts—the first, for $5,000 damages bottomed on the wrongful death of the father through the negligence of defendant, its agents, servants and employees; the second (*mutatis mutandis*) for like amount for the wrongful death of the mother at the same time and place; and the third (*mutatis mutandis*) for $10,000 damages for the death of both parents at the same time and in the same accident. Under the circumstances hereinafter set forth, plaintiffs dismissed as to the first and second counts and, at a trial without a jury, judgment went in their favor on the third for $10,000. From this judgment, on due steps, defendant appeals.

Pertinent to questions made, it will be well to set forth the third count of the petition—the constitutive elements of the abandoned counts needing no attention. Said third count follows:

"For another and further cause of action, plaintiff states that Benjamin F. Aley is a minor of the age of twenty years; that Ruby Aley is a minor of the age

of seventeen years; that Howard Aley is a minor of the age of fifteen years, and that Mary Aley is a minor of the age of twelve years; that they are the children of Tilghman H. Aley and Alice Aley, who were at all the times hereinafter mentioned husband and wife, and are the only minor children and heirs of said Tilghman H. Aley, who was their father, and Alice Aley, who was their mother, and that they reside in Cowley county, Kansas, and have no legally appointed guardian or curator in the State of Missouri.

"That J. W. Aley has been duly appointed and has consented to act as their next friend in this suit, and that the petition for said appointment, the written consent of said J. W. Aley to be said next friend, and the said order of appointment, have been duly filed in the office of the clerk of said court.

"That the defendant now is and at all the times hereinafter mentioned was a corporation duly organized and acting under the laws of the State of Missouri, and was the owner of and engaged in operating a line of railway into and through the counties of Cowley and Chautauqua and other counties in the State of Kansas to and beyond the eastern line of said State of Kansas and into and through the county of Johnson and other counties in the State of Missouri to the city of St. Louis, Missouri, and is and was at all said dates a common carrier of passengers and freight.

"That on the — day of October, 1904, the said Tilghman H. Aley and the said Alice Aley, the father and mother of the minors aforesaid, purchased from the duly and legally authorized agent of the defendant at Cedarvale, Kansas, tickets which entitled each of them to ride on the defendant's train of cars as passengers from said station of Cedarvale to the city of St. Louis, Missouri; that they each paid to said defendant's agent at the said station of Cedarvale, who was duly authorized by the defendant to sell tickets to per-

sons desiring to take passage and travel upon defendant's trains from said station of Cedarvale to other points upon its railroad in Kansas and Missouri, including the city of St. Louis, the usual and customary price charged and collected by defendant for carrying passengers upon its trains from said station of Cedarvale to the city of St. Louis, upon which said Tilghman H. Aley and Alice Aley intended to and did take passage on said date.

"That after purchasing said tickets from said agent of defendant and paying him therefor, the said Tilghman H. Aley and Alice Aley boarded and took passage upon one of defendant's trains at its station of Cedarvale, Kansas, for the purpose of being carried to the city of St. Louis as passengers thereon, and upon which train they each became and were passengers, and the defendant undertook to carry them safely from said station of Cedarvale to the city of St. Louis as passengers; that said defendant did not carry said Tilghman H. Aley and Alice Aley safely, as it was its duty to do, but while they were passengers upon its said train, on the 10th day of October, 1904, when it reached a point about a mile and a half east of the city of Warrensburg, Missouri, the train on which said Tilghman H. Aley and Alice Aley were riding and being carried, by the carelessness, negligence and wrongful acts and conduct of defendant, its agents, servants and employees, was, without fault or negligence or want of care on the part of the said Tilghman H. Aley or Alice Aley, struck by another train and engine on defendant's road and the two trains were then and there and thereby, without fault or negligence on their part, but by reason of the carelessness, negligence and want of proper care on the part of defendant, its agents, servants and employees, collided, and another train of defendant's being run, managed and operated by the defendant, its agents, servants and employees

and going westward on the same track that the train upon which the said Tilghman H. Aley and Alice Aley were riding was going eastward, and while both of said trains were running at a high rate of speed, ran into each other, causing what is usually known as a head-end collision, which caused a sudden and severe jar to said train and the car in which said Tilghman H. Aley and Alice Aley were riding was wrecked and demolished, thereby killing the said Tilghman H. Aley and Alice Aley; that said defendant, its agents, servants and employees were negligent and careless in the operation and management of said trains of cars as aforesaid, and on account thereof said collision occurred, by reason of which the said Tilghman H. Aley and Alice Aley were killed; and that the death of the said Tilghman H. Aley and Alice Aley were caused solely by the said negligence and carelessness of the defendant, its agents, servants and employees aforesaid, to the damage of said minors in the sum of ten thousand dollars.

"Wherefore, he prays judgment against the defendant for the said sum of ten thousand dollars, with costs of this suit."

The amended answer follows:

"Now comes said defendant and for amended answer herein, denies each and every allegation contained in the first count of plaintiff's petition.

"Wherefore, it prays to be discharged with its costs.

"(a)  Said defendant for further defense states that J. W. Aley, who is alleged in petition to be the next friend in the prosecution of this suit for the alleged minor plaintiffs, is now and ever since the 1st day of January, 1904, has been a resident of the State of Kansas; that by reason thereof he is disqualified to act as next friend in this action, and neither the court nor clerk has any authority to appoint him to act in

any such capacity; that by reason of the premises neither said minors nor said J. W. Aley have any legal authority to prosecute this suit.

"Wherefore, defendant prays that the same may be dismissed, together with its costs herein.

"(b)  Said defendant for further defense states that not only has said J. W. Aley been a non-resident of the State of Missouri since the 1st day of January, 1904, and by reason thereof has no legal capacity to maintain this action, but it is also true that said J. W. Aley, in attempting to act as next friend herein, has never given any bond, as required by law, for the faithful performance of his duty and conditioned that he would account to said infants for all money or property which might be recovered in said suit.  That by reason of the premises neither said J. W. Aley nor these plaintiffs have a legal right or legal capacity to maintain this action.

"Wherefore, defendant prays to be discharged with its costs.

"2.  Said defendant for amended answer to second count of plaintiff's petition herein adopts in all respects its answer to first count and makes the same a part of the answer in this count.

"Wherefore, defendant prays to be discharged with its costs.

"3.  Said defendant for amended answer to third count of plaintiff's petition herein adopts in all respects its answer as to first count and makes the same a part of the answer in this count.

"Wherefore, defendant prays to be discharged with its costs."

The reply is a general denial of new matter.

At the trial term plaintiffs filed a motion to strike out paragraphs *a* and *b* of the answer because said paragraphs state no defense to the cause of action. This motion was sustained, defendant electing to stand

on its answer and saving its exception. The trial proceeding on the heels of this ruling, at its beginning defendant filed the following motion:

"Now comes said defendant and moves the court to require said plaintiffs under the third count of petition to elect whether they will try the cause predicated upon the alleged damages growing out of the death of Alice Aley, and to strike out the remaining alleged cause of action for the following reasons:

"1. Because the statute under which this suit is brought only contemplates a recovery in any one count for $5,000.

"2. Because the provisions of the statute under which this suit is brought do not contemplate that a judgment can be rendered upon a single count for more than $5,000."

This motion was taken under advisement with the case on its merits and being finally overruled defendant excepted.

The admissions made in open court by defendant include the following:

That J. W. Aley (the *prochein ami*) was a resident of the State of Kansas, was appointed next friend of the minor plaintiffs by the clerk of the circuit court of Johnson county and that he gave bond for costs but none as next friend. That Benjamin F., Ruby, Howard and Mary Aley, the minor plaintiffs, are minor children of Tilghman H. and Alice Aley, deceased (husband and wife), and the only minor children of said decedents. That Tilghman H. and Alice were killed in a wreck while passengers on defendant's train a short distance east of Warrensburg, Missouri, on October 10th, 1904. That as such passengers they had paid their fare to St. Louis and return, and on said date while on their journey, a little east of Warrensburg, the train on which they were riding collided, "head-end," with one of defendant's freight trains go-

ing west, wrecking both. That after the wreck the mother and father were found dead and were killed in the wreck. That the freight train was running contrary to orders. That at the present time, as at the commencement of the suit, the next friend was a non-resident of the State of Missouri. That the application and the proceedings in regard to the appointment of next friend were in proper form and in compliance with the statutes (except defendant's learned counsel contends that J. W. Aley as a non-resident had no right to maintain the action, especially without bond). That the petition was filed on December 20th, 1904, and summons served on the same day. That this suit is the only suit brought by these plaintiffs, or the next friend named, or by any other person on behalf of these minors for the deaths of their father and mother, and that neither said father nor mother "ever brought any suit to recover any damages on account of the death of either in the wreck aforesaid."

Supplementing the foregoing admissions, plaintiffs introduced testimony tending to show, among other things, that decedents were going to the St. Louis Fair from Cedarvale, Kansas. That they took passage at Cedarvale on one of defendant's passenger trains. That the witness testifying (Sullivan) was on the same car and sat about five seats from them. That their train was running fast when a collision occurred at 4:10 a. m. That the tender of the engine of their train was telescoped back into the train on which witness and Mr. and Mrs. Aley were riding. That thirty-one passengers were killed, including Mr. and Mrs. Aley. That they were dead when witness again saw them. That the body of Mr. Aley was lying on the floor by the side of the seat on which he had been sitting with his wife. That her body was in the seat. That they were both killed by the collision and the destruction of the car.

At the close of the case, defendant asked the following instruction:

"The defendant under the third count of plaintiffs' petition asks the court to declare that the plaintiffs are not entitled to recover because the petition fails to show whether the husband or wife survived each other, and for the further reason that it is attempted to recover $10,000 under the statute in a single count, wherein only a verdict of $5,000 could be rendered; and also because it does not appear from the petition nor from the evidence whether Tilghman H. Aley survived his wife or whether his wife, Alice Aley, survived her said husband."

The bill of exceptions does not show that the foregoing instruction was formally refused. But, by necessary implication, it must have been taken, *nisi*, as bad law under the facts, since the finding of the court was against it and in favor of plaintiffs for $10,000.

The motion for a new trial pointed to the following alleged errors: Error in striking out paragraphs *a* and *b* in the answer, and herein of error in allowing a non-resident of the State to prosecute this action as next friend, especially without giving bond. Error in overruling the motion to elect under the third count. Error in refusing defendant's declaration of law in the nature of a demurrer to the third count.

In the motion in arrest it is asserted that neither count of the petition states a cause of action and, especially, that plaintiffs had no legal right to maintain the alleged causes of action for the reason that the suit was filed less than six months from the death of the father and mother and the petition does not allege whether the father survived the mother, or the mother, the father. These motions being overruled defendant excepted.

In this court learned counsel rely on the following propositions to reverse the case:

(1) That the clerk of the circuit court of Johnson county had no right to appoint a non-resident of Missouri as next friend nor can such non-resident legally prosecute this suit, "and especially on account of having given no bond as required by section 554, Revised Statutes 1899."

(2) If respondents are entitled to recover it is not by virtue of the common law, but by virtue of a transmitted right conferred by section 2864, Revised Statutes 1899. That section reserves to itself the exclusive power of naming those who could maintain the action; fixes the time in which each could sue, and fixes the forfeiture or penalty of any one count at $5,000. Under said section no right of action is given for $10,000 in a single count or otherwise.

(3) The action was prematurely brought. By the statute the absolute right of action for the first six months is in the husband for the death of the wife, and in the wife for the death of the husband.

(4) If it be claimed that the husband and wife perished simultaneously, then, in answer to such claim, it is contended that there is no presumption that such is the fact, no allegation that such is the fact, no proof that such is the fact. A case cannot stand on mere conjecture, especially so where the case is based on a statute in derogation of the common law.

(5) If this court should hold under the pleadings and facts either that Tilghman H. survived Alice, or Alice survived Tilghman, and that these plaintiffs could maintain an action under the third count upon the death of the survivor for $5,000, and, if this court should further hold that the facts partially sustain the judgment, *nisi*, then it is contended that the cause should be reversed with directions to enter a judgment for plaintiffs for $5,000 and tax the costs of this proceeding against respondents.

I. Is there merit in either branch of the first proposition advanced, viz.: That there was error in appointing a non-resident of Missouri next friend for the minor plaintiffs, or in allowing the suit to be maintained without a bond?

(a) The statute is silent on the question of the residence of a next friend. The general policy, evidenced by our constitutional and statutory provisions, is to expressly provide for residence in all matters where residence has been deemed a *sine qua non*. See, for example, those constitutional and statutory provisions making residence of the essence of the right to hold certain offices. So, too, under the Administration Act, Revised Statutes 1899, section 10, it is expressly provided that letters testamentary or of administration shall in no case be granted to a non-resident of the State. The same provision exists relating to curators and guardians, section 3492. Likewise the domestic residence of bondsmen in replevin and attachment suits is expressly required in sections 372 and 4467. In fine, our statutes abound with like provisions. In this condition of things, establishing the legislative policy of expressly providing for residence when residence rises to the plane of a condition precedent, the omission to provide for the domestic residence of a next friend in a suit prosecuted by minor plaintiffs is made (to borrow an idea from Lord John RUSSELL) conspicuous by its absence. The reasonable deduction from such omission is that in the legislative mind the residence of a next friend was not deemed vital.

The good sense of the thing runs strongly the same way. Take this case: These minors were residents of Kansas. The party appointed their next friend was their uncle. There is no suggestion he was wanting in integrity or capacity. He stood, then, *rectus in curia*. Presumably, these infants were strangers in a strange land in Johnson county, Missouri. In this fix, what

insuperable objection can the eye of the law see in the way of his appointment to look after the interest of his nephews and nieces in so important a case? Why may not the genial sun of comity shine upon the situation? When once appointed he became, in a sense, an officer or agent of the court, its ministerial hand, in and about the conduct of the suit. His function was in the nature of a guardian *ad litem*—the court itself, however, remaining their real guardian clothed with the paramount general duty of protecting their interests—they being the real parties to the suit. [Blumenthal v. Craig, 81 Fed. 320.]

As counsel have pointed us to no general principle of law impinged upon and to no controlling or persuasive adjudication holding such appointment void, we conclude it was well enough to select a near relative whose business capacity and character are not only unblemished but likely to receive edge and temper from blood kinship, regardless of whether he lived in Kansas or on this side of the line. Nearness of kinship is an element to be considered in such appointment. [Middleditch v. Williams, 47 N. J. Eq. 1. c. 589; 14 Ency. Pl. & Pr., 1033.] In the Middleditch case the *dictum* of Lord BROUGHAM in Nalder v. Hawkins, 2 Myl. & K. 243, is cited approvingly, viz.: "The true and just principle which should govern in all such cases is this: No discouragement ought to be thrown in the way of persons *bona fide* suing as next friends, but no undue facility should be given to mere volunteers, who interfere rather for their own purposes than for the infant's benefit."

We perceive no error in striking out paragraph *a* of the answer.

(b) Was it reversible error to allow the case to proceed to judgment without requiring a bond from the next friend as provided in section 554, Revised Statutes 1899? Observe, that section does not require

a bond whether or no. It only contemplates one to be given by the next friend if the court or officer to whom the application for such appointment is made requires one to be executed to such infant in double the amount claimed in such suit with such securities as shall be approved by the court or officer, conditioned that such next friend shall account to such infant for all money or property which may be recovered in such suit. Section 555 provides that such bond shall be delivered to such officer before the appointment shall be made, and shall be filed in the office of the clerk of the court in which the suit shall be brought.

There being an option in the court or officer to require or not to require a bond prior to the appointment of a next friend, it would be most unsound exposition to hold either that the giving of a bond was a jurisdictional fact, or that the unwise exercise of the discretion of the court or of the clerk in that behalf should cast an infant in a meritorious case.

The general doctrine is that a next friend is not entitled to receive the money recovered in an action. [Wood & Henderson v. Claiborne (Ark.), 102 S. W. 219; 14 Ency. Pl. & Pr., 1037.]

It is not necessary for us to hold that a next friend is entitled as of right, on the strength of his mere appointment under our statute, to receive the money proceeds of a judgment and discharge the judgment, or to give an acquittance to a defendant, or to receive the proceeds of the judgment from the infant's attorneys of record and give an acquittance to them. We will decide such a case, when one is here. Undoubtedly the next friend might be guilty of lapses, misconduct or negligence in the conduct of a suit rendering him liable to the infant. A bond would be useful from such a standpoint, if from no other. But it must be admitted that the statutes of this State seem to go further and to contemplate that a next friend on a pinch may

come into possession of the property or damages recovered in the suit. The prescribed terms of the bond point that way. But this case does not require that we should so hold, therefore, the question is reserved. If, however, that be the correct interpretation of our statute, then we unhesitatingly say that no court should allow the money or property of an infant plaintiff to pass into the hands of a next friend without the safeguard of a bond. The object of the law being the protection of the infant and the doctrine relating to the appointment of a next friend being borrowed from chancery, the right to require the execution of a bond at any time needed for the protection of the wards of the court is necessarily implied, though the statute contents itself with a mere reference to an optional bond in advance. It was, accordingly, held in Jones v. Steele, 36 Mo. 324, that the court should have appointed a next friend and approved a bond after judgment and while the case was pending on a motion in arrest. It was held in Temple v. Price, 24 Mo. 288, that a natural guardian ought to be allowed to give bond on his application during the pendency of the suit. See, also, Johnson v. Beauchamp, 5 Dana (Ky.) 70. In Neal v. Spooner, 20 Fla. 38, it was held that it was no concern of a defendant that a bond had not been given by the next friend, since the bond is required only for the protection of the minor in the event of a recovery of money. We think that is the better view. Defendant needs no protection from a bond. It has ample and plain protection from loss. It can pay the money into court and obtain its discharge. It can pay on a *fi. fa.* to the sheriff and obtain its discharge. On the other hand, if the proceeds of the judgment should pass through the hands of the attorneys for the minor plaintiffs and they (as well they may) become solicitous about their release from liability for handling that money or paying it over, they (without bothering defendant) can look

sharply to the authority of the one giving them an acquittance. On top of it all, the court of its own motion, here or below, because of its inherent power and duty to protect its wards, may order a bond given by the next friend. To exact a bond in double the amount from a next friend before commencing a suit for damages for minors, ought not to be held a condition precedent under the discretion lodged in the clerk or court by our statutes, because the exacting of a bond in every case before suing might be a lion in the way of the infant in securing his rights in court, and, therefore, the statute has wisely left the matter open to be settled, as each case may arise, in the sound discretion of the court or officer making the appointment. We can not say such discretion was abused in this instance. Therefore, we are of opinion there was no error in striking out paragraph *b* of defendant's answer. It constituted no bar to, and pleaded no matter in abatement of, the suit.

II. Under the third proposition advanced it is insisted that the suit was prematurely brought. In other words, the minors should have waited six months after the death of their parents before suing. By section 2864, Revised Statutes 1899, it is provided that suits may be brought: "First, by the husband or wife of the deceased; or, second, if there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of the deceased," etc.

It may be conceded to learned counsel that the right of action is a transmitted right, that such right did not exist at common law and is conferred only by section 2864, *supra*. It may be conceded also that said section reserves to itself the exclusive power of naming those who could maintain the action, and of fixing the time in which each of the enumerated persons could sue, as contended in the second proposition as-

serted in their brief. The cases cited by them abundantly sustain counsel's contention, but none of them settle the crucial proposition in this case. Here there was no father or mother to sue. The case proceeds on the theory they were both killed in the same accident. Why grant six months for persons to sue who, having given up the ghost, have no further use for earthly courts and need no aid from laws of men? The father being dead, the right to sue for the mother's death was transmitted by the statute (not to him, but) to his minor children by her. The mother being dead, the right to sue for the father's death was transmitted (not to her, but) to her minor children by him. The very language of the statute presupposes, as a condition precedent to a six months' wait, that the father or mother, having the right to sue for the first six months, should be *in esse*. Not being *in esse*, the minor children may sue under the general principle of law which gives a right of action whenever the same accrues. To put the austere construction on the statute contended for by defendant would be to read into it a provision not only not there by express terms, but excluded by the phrase, "if there be no husband or wife."

The point is disallowed to defendant.

III. Other propositions asserted by learned counsel overlap each other or are so intimately related that they may be considered under one head. Some of them are ingenious to a degree and are presented with much force and learning. By them it is asserted there is no presumptions the parents perished simultaneously. That the case cannot stand on mere conjecture in that behalf. That there could be no recovery in one count under section 2864, *supra*, for more than a single death, therefore, the judgment on the third count should be arrested or at least pared down to a single recovery of $5,000. Is there merit in these contentions on the record before us? We think not. Because:

(a)  While the petition does not expressly allege that the mother and father were killed simultaneously, yet what is said inferentially amounts to that. So, the proof points that way. Here is a fast-running train colliding with another on the same track going the other way, at an hour before dawn when the vital forces run low and sleep may be presumed as likely. It was not without reason that in pioneer times Indians planned an attack on the cabin of the lone settler just before daybreak, nor is the common notion without reason that the soul of the sick man, *in extremis*, is prone to part from the body at that hour. The tremendous force of this collision, the wreck of the car, the position of the bodies after death in and by the seat occupied indicate instantaneous and, hence, simultaneous death. The subtleties of the civil law relating to survivorship where parties perish in a common disaster have no place under the facts of this record, nor have they place in courts proceeding according to the course of the common law. [United States Casualty Co. v. Kacer, 169 Mo. l. c. 310, *et seq.*, and authorities cited.] There being no presumption as to survivorship, one way or the other, each case is to be settled on its own facts and, if survivorship be an essential element in the case, the party asserting it carried the *onus*. If, now, the burden was on plaintiffs (which we do not hold) it would not be going too far to hold they successfully carried that burden.

(b)  But we do not deem the questions considered in paragraph *a* under this head material. The real and turning question relates to correct pleading rather than to a construction of the terms of the Damage Act. That act provides a penalty by way of compensation to the minor children in the sum of $5,000 for each parent and the vital question is this: If there be two causes of action arising out of one injury, to-wit, the simultaneous wrongful death of both parents, is it

a fatal defect to commingle these causes of action in one count,—is it reversible error to allow a judgment for $10,000 for the death of both parents under that count?

In the observations to be made on that question we shall assume it was proper to sue for the death of both parents in one suit, since the law does not look with favor on splitting up causes of action whether they arise for one entire injury from a tort or for the violation of one entire right under a contract. [Stickford v. St. Louis, 75 Mo. 309; Union R. R. & Transportation Co. v. Traube, 59 Mo. l. c. 362; Perry v. Dickerson, 85 N. Y. 345; Baumhoff v. Railroad, 205 Mo. l. c. 269, *et seq.*] We shall assume, further, that it would have been better pleading to have stated the facts essential to recover for the death of each parent in a separate count—in other words, plaintiffs might better have stood on their first and second counts. Yet, assuming the foregoing propositions to be true, we cannot allow the point to defendant under the facts of this record. And this is so because the allegations of the third count are not antagonistic and self-destroying. At the utmost, the only just criticism to be leveled at the third count is that it improperly commingled two causes of action—not that it states none. Such defect may be waived by answering. We have been so lately over the question that it would be cumbering the opinion to rediscuss it. We can add nothing to what was said in Jordan v. Railroad, 202 Mo. 418, and in White v. Railroad, 202 Mo. 539, on that point, and shall not try to do so. On the authority of those cases, it must be held that defendant waived the defect by answering.

Nothing said in Casey v. Railroad, 205 Mo. 721, militates against this holding. In that case and in Casey v. Railroad, 116 Mo. App. 235, plaintiffs at-

tempted to unite causes of action arising under different sections of the Damage Act, and, not only so, but undertook for purposes of their own to remit a portion of the fixed, entire statutory penalty provided by section 2864, *supra.* Not so in this case. Here, plaintiffs seek the recovery of the entire fixed penalty provided by statute for the death of each parent. They do not commingle causes of action arising under different sections of the Damage Act and which may call for different lines of proof. To the contrary, they commingled causes of action arising under the same section of the Damage Act and the proof sustaining the one necessarily sustained the other. In the Casey case we affirmed the holding of the St. Louis Court of Appeals to the effect that plaintiffs could not split up the one entire statutory death penalty provided for compensation for a wrongful death. Doubtless, by the same token, we would hold that plaintiffs could not add to such fixed statutory death penalty, but in this case there is neither an adding to nor a splitting up, and, hence, the doctrine of the Casey case is not applicable.

It results that the motion to elect came too late and was properly overruled with the motions for a new trial and in arrest, and defendant's instruction relating to the third count.

Defendant's negligence being admitted, and there being no reversible error in the trial, the judgment is affirmed.

All concur.