BERGER MANUFACTURING COMPANY, Respondent, v. LLOYD et al., Appellants.

St. Louis Court of Appeals, May 16, 1905.

(Opinion by Goode, J.)

1. BUILDING CONTRACT: Bond: Construction. Where a contractor under a contract with a Board of Education for the erection of a school building, gave bond for the faithful performance of his contract, which contract provided that he should pay the wages "of artisans and laborers and all those employed by or furnishing material to the said party of the second part" (the contractor), one who furnished to a subcontractor material which the latter manufactured and used in the erection of the building, was not protected by the terms of the contract and could not recover on the bond.

(Dissenting opinion by Bland, P. J.)

2. ———: ———: ———. Where a contractor, under a contract with a Board of Education to build a school building, gave bond for the performance of his contract, which bond provided that he should make payments "for all materials used in the work provided for in the contract and specifications," this provision was intended to protect all those who would have been entitled to mechanic's liens against it, had it been a private building, and one furnishing to a subcontractor material which was manufactured and used in the building, was entitled to sue and recover on the bond for such material in case he was not paid.

3. **PRACTICE: Argument.** Where counsel by misunderstanding was denied the right to argue his case to the jury, it was error.

4. ———: ———: **Harmless Error.** But where the question was purely one of law and a different verdict would have had to be set aside, the error in refusing to allow the counsel to argue the case was harmless.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

REVERSED.

*Henry A. Hamilton* for appellants.

(1) A contract between two parties upon a valid consideration may be enforced by a third party, when entered into for the benefit of such third party, even though he may not be mentioned in the contract, and though he was not privy to the consideration. Rogers v. Gosnell, 58 Mo. 590; State ex rel. v. Gaslight Co., 102 Mo. 482, 14 S. W. 974, 15 S. W. 383; Ellis v. Harrison, 104 Mo. 270, 16 S. W. 198; City to use v. Von Phul, 133 Mo. 561, 34 S. W. 843; Devers v. Howard, 144 Mo. 671, 46 S. W. 625; School District v. Livers, 147 Mo. 580, 49 S. W. 507; Bethany v. Howard, 149 Mo. 504, 51 S. W. 94; Lime & Cement Co. v. Wind, 86 Mo. App. 163. (2) No one has a right of action on an agreement except those who are in the minds of the parties as beneficiaries of its provisions, and it must be determined from the language employed in the instrument what parties were intended as beneficiaries by the parties to the agreement. State ex rel. v. Loomis, 88 Mo. App. 500; Howsman v. Water Co., 119 Mo. 304, 25 S. W. 200; State v. Railroad, 125 Mo. 596, 28 S. W. 1074; Porter v. Woods, 138 Mo. 539, 39 S. W. 794; Ins. Co. v. Water Co., 42 Mo. App. 118. (3) The contract and bond involved in the case at bar must be construed together, and the obligation of the sureties on the bond should not be enlarged beyond what is warranted by a fair and

reasonable construction of its terms. Sexton v. Anderson, 95 Mo. 373, 8 S. W. 564; Houck v. Frisbee, 66 Mo. App. 16; Bauer v. Cabanne, 105 Mo. 110, 16 S. W. 521; Cochrane v. Stewart, 63 Mo. 424; Earth v. Allen, 55 Mo. App. 107; Bricken v. Stone, 47 Mo. App. 530. (4) The privilege of argument by counsel is established by precedent and guaranteed by constitutional law. Counsel is recognized as constituting an element in judicial investigations; his right of argument to the jury cannot be denied. Proffat on Jury Trials, sec. 248, (Ed. 1877); Weeks on Attorney at Law, (2 Ed.), 240; Reagan v. Transit Co., 180 Mo. 117, 79 S. W. 435.

*R. M. Nichols* for respondent.

(1) Plaintiff, materialman of the subcontractor the Quernheim Company, is embraced with the meaning of the bond, both in its literal interpretation and under repeated decision. The clause of the bond under interpretation follows: "Shall make payment to the parties furnishing same for all material used in the work, . . . and for all labor performed on such work, whether by sub-contract or otherwise." Lime & Cement Co. v. Wind, 86 Mo. App. 163; State ex rel. v. Loomis, 88 Mo. App, 500; Forge Co. v. Cullen & Stock, 105 Mo. App. 484, 79 S. W. 1024; City of St. Louis, etc., v. Von Phul, 133 Mo. 565, 34 S. W. 843; Devers v. Howard, 144 Mo. 671, 46 S. W. 625; School District v. Livers, 147 Mo. 581, 49 S. W. 507; Bethany v. Howard, 149 Mo. 504, 51 S. W. 94; Crone v. Stinde, 156 Mo. 263, 55 S. W. 863, 56 S. W. 907; Lime & Cement Co v. Citizens Bank, 158 Mo. 273, 59 S. W. 109. (2) The testimony of the defendant in the case under the pleadings was sufficient to warrant a verdict for the plaintiff. There was no disputed fact to go to the jury for discussion, and the court was right in directing counsel that there was nothing to argue. 1 Thompson on Trials, 703, 721; Neidig v. Cole, 13 Neb. 39; 2 Encyclopedia of P. & P., 700; Houck

v. Gue, 30 Neb. 113; Douglas v. Hill, 29 Kan. 528; Dixon v. Burke, 25 Ga. 226; Dunkard v. Railroad, 34 Md. 197; Trice v. Railroad, 35 Mo. 416.

GOODE, J.—The Berger Manufacturing Company (plaintiff) sold to Quernheim Sheet Metal Works Company some galvanized iron and solder out of which the Quernheim Company manufactured the guttering, spouting and other sheet metal articles which were needed in the construction of the Ralph Waldo Emerson School Building in the city of St. Louis. Hiram Lloyd had the contract with the St. Louis Board of Education to erect that schoolhouse. He made a contract with the Quernheim Company to furnish him the guttering and other sheet metal articles he would need in constructing the house according to the contract. The testimony of William H. Quernheim, President of the Quernheim Company was that said company purchased from the plaintiff (Berger Manufacturing Co.) 12,430 pounds of galvanized iron at $3.99 a hundred pounds and 105 pounds of solder at 17 cents a pound, making a total of $513. 81. These materials were delivered by the Berger Company at the Quernheim Company's shops and made by the latter company into gutters, spouts and hot-air pipes. The manufactured articles were delivered by the Quernheim Company to Hiram Lloyd at the Ralph Waldo Emerson School Building and were accepted and fully paid for by Lloyd. It seems the Quernheim Company put the spouting on the building. The contract between Lloyd and the board of education for the erection of the schoolhouse, after setting out the nature of the work to be done and the other details of the contract, and providing how Lloyd should be paid in different installments and that he should be paid the last installment four months after the acceptance of the building by the board of education, contains this clause;

Mfg. Co. v. Lloyd.

"Provided that the wages of artisans and laborers, and all those employed by or furnishing materials to the said party of the second part, shall have been paid and satisfied; and in case the said party of the second part shall fail so to pay and satisfy all and every claim and demand against said building as aforesaid, the said party of the first part may, if it deems proper so to do, retain from the moneys due and coming to said party of the second part enough to pay and satisfy such claims and demands, and therewith pay such claims, it being, however, understood that nothing herein contained shall in any way be construed as impairing the right of said party of the first part to hold the said party of the second part, or his sureties liable on their bond for any breach of the conditions of the same."

The bond in suit was given by Lloyd for the faithful performance of his contract. The paragraph we have quoted from the contract shows the intention of the board of education was to require Lloyd to pay the wages of artisans and laborers who worked on the building and all persons employed by or furnishing material "to the party of the second part;" that is, to Lloyd. Lloyd had nothing to do with the Berger Manufacturing Company and it furnished him no material. He made a contract with the Quernheim Company to furnish guttering and spouting for the building and paid said company for those articles when they were delivered or afterwards. The Quernheim Company bought but never paid for the materials out of which it manufactured said articles. In my judgment the Berger Company did not furnish any material to Lloyd within the meaning of the contract and, hence, has no right of action on the bond given to secure faithful performance of the contract. I therefore favor a reversal of the judgment. Judge Nortoni concurs in this opinion and the judgment of the court below is accordingly reversed.

113 app—14

DISSENTING OPINION BY BLAND, P. J.

BLAND, P. J. (dissenting).—On July 9, 1901, defendant Lloyd entered into a written contract with the board of education of the city of St. Louis, whereby in consideration of the sum of $104,250 to be paid, he agreed to erect and complete at his own cost, a public school building, in the city of St. Louis, known as the Ralph Waldo Emerson School. On the same date and at the same time, the contract was executed, Lloyd, as principal, and the other defendants, as sureties, executed and delivered to the said board of education the following bond:

"Know all men by these presents, that the undersigned Hiram Lloyd, of the city of St. Louis, as principal, and John W. Reinhardt, Hy. F. Kiel and G. A. Gruner, of the city of St. Louis, as sureties, are held and firmly bound unto the board of education of the city of St. Louis in the sum of fifty-two thousand one hundred and twenty-eight and 50-100 dollars ($52,128.50) lawful money of the United States of America, well and truly to be paid to the said the board of education of the city of St. Louis, for which payment well and truly to be made, we bind ourselves, and each of us by himself, our and each of our heirs, executors and administrators, firmly by these presents.

"Signed, sealed and dated at the city of St. Louis this ninth day of July, A. D., 1901.

"The condition of the above obligation is such: That whereas the said Hiram Lloyd has on the day of the date of these presents executed and entered into a certain contract for the performance of certain work and furnishing of certain materials in the contract described, which said contract is hereto annexed:

"Now if the said Hiram Lloyd shall well and truly perform and fulfill all and every, the covenants, conditions, stipulations and agreements in said contract mentioned as agreed to be performed and fulfilled by him, and if the said Hiram Lloyd shall well and truly make

all such alterations and additions in said work as may hereafter be ordered by the commissioner directing said work, or be thereafter contracted for or agreed upon. under the terms of the contract hereto annexed.

"And if the said Hiram Lloyd shall repay to the said the board of education of the city of St. Louis all sums of money which it may pay to other persons on account of work and labor done or materials furnished, which said Hiram Lloyd may fail to do or furnish, and shall pay to the said board of education of the city of St. Louis, all damages it may sustain, by reason of the non-performance or malperformance on the part of the said Hiram Lloyd of any of the covenants, conditions, stipulations or agreements of said contract including all alterations, modifications and additions, as aforesaid, and shall make payment to the parties furnishing the same for all materials used in the work, provided for in the said contract and specifications hereunto annexed including such alterations, modifications and additions and for all labor performed on such work, whether by subcontractor or otherwise, then this obligation shall be void, otherwise the same shall remain in full force and virtue.

"It is moreover understood and agreed that the said sureties hereby expressly waive whatever right they may have to be notified of any such alterations, modifications and additions which may hereafter be agreed upon by the parties to said contract, or said commissioner acting for said board of education, and acknowledged themselves to be bound for all such alterations, modifications and additions as fully as though proper notice thereof had been given to them and they had consented thereto; provided always, that the total extra cost of such alterations, modifications and additions shall not exceed the sum of $5,337 over and above the contract price mentioned in said contract.

"This bond may be assigned by the obligee to subcontractors, materialmen and laborers, who at the in-

stance of the principal obligor, have furnished work or material towards the completion of the contract, and in case of such assignment it sh.. l inure to the benefit of all such parties alike, in proportion of their respective demands remaining unpaid."

Plaintiff is a corporation and sued on the bond to recover the sum of $513.81, with legal interest, the alleged value of certain galvanized iron solder, alleged to have been used in the construction of the building. In respect to the iron and solder, the evidence shows that Lloyd contracted with the Quernheim Sheet Metal Works Company, a corporation, to furnish him all the sheet metal, guttering, spouting, hot water pipes, etc., called for by specifications for a certain sum. The Quernheim Company manufactured and erected all the guttering, spouting, hot water pipes, etc., required in said building and was paid therefor in full by Lloyd. The evidence further shows that the Quernheim Company bought the sheet metal and the necessary solder to convert the metal into pipes from the plaintiff and agreed to pay $513.81 for the same. The evidence also shows that plaintiff sold the material to the Quernheim Company with the knowledge that it was to be used in the school building, and also on the information that the bond sued on had been given by Lloyd, which as plaintiff's evidence shows, served as an inducement to it to extend credit to the Quernheim Company.

The court refused the defendants' instructions and gave the following for plaintiff:

"The court instructs the jury that if they believe and find from the evidence that the plaintiff, the Berger Manufacturing Company, furnished to the Quernheim Sheet Metal Works Company, the sheet metal, consisting of 12,430 pounds No. 24 guage galvanized iron at the agreed price of $3.99 per 100 pounds, and 105 pounds solder at the agreed price of 17 cents per pound, which the said Quernheim Sheet Metal Works Company furnished the defendant Hiram Lloyd, and which the

said defendant Lloyd used in the construction of the Emerson school building, and if you further find from the evidence that the said Quernheim Sheet Metal Works Company failed to pay the plaintiff for the said material, and that plaintiff has not received payment for the same from any other person then you must find a verdict for the plaintiff, and against the defendants, for the penalty of the said bond, to-wit: the sum of $52,128.50, and you must assess plaintiff's damages at whatever sum you may believe from the evidence to have been the reasonable market value of the said material at the date of furnishing the same, together with interest thereon from the eighth day of November, 1902, the date of bringing this suit, with six per cent per annum."

Through a misunderstanding in regard to the position taken by defendants' counsel, the court denied counsel the right to argue the case to the jury. The verdict was for the plaintiff for the full amount sued for, with legal interest. Defendants appealed.

1. The contention of defendants is that the plaintiff is not protected by the bond sued on, that it is not "nominated in the bond." For the purpose of construction the bond and contract should be considered as one instrument . Following the stipulations in the contract in respect to payments of the contract price for the erection of the building, is the following proviso:

"Provided, that the wages of artisans and laborers, and all those employed by or furnishing materials to the said party of the second part, shall have been paid and satisfied, and in case the said party of the second part shall fail so to pay and satisfy all and every claim and demand against said building as aforesaid, the said party of the first part may, if it deems proper so to do, retain from the moneys due and coming to said party of the second part enough to pay and satisfy such claims and demands, and therewith pay such claims, it being, however, understood that nothing herein contained shall in any way be construed as impairing the right of

said party of the first part to hold the said party of the second part, or his sureties liable on their bond for any breach of the conditions of the same."

One of the conditions recited in the bond is, that Lloyd should make payments, to the parties furnishing the same, "for all materials used in the work provided for in the contract and specifications." This clause in the bond is broader than the proviso (quoted) in the contract. The building being a public school building, no mechanic's lien could attach to or be enforced against it, and the evident purpose of the proviso in the contract and stipulation (quoted) in the bond, were to protect those who, had the building been a private one, would have been entitled under the law to file a mechanic's lien against it. The proviso in the contract is not broad enough to bring in a materialman who might furnish material to a subcontractor under Lloyd. The stipulation, however, in the bond embraces all who might furnish material used in the work provided for in the contract and specifications, hence, if plaintiff furnished material used in the work provided for in the contract and specifications, it would have been entitled to a lien, if the building had been a private one, therefore it is protected by the bond. The evidence shows that plaintiff furnished the material knowing that it was to be used in the building and relying on the surety it believed the bond furnished. Defendants contend, however, that as the material was sold to the Quernheim Company and delivered at the company's shops, where it was manufactured into pipes and then used in the building in its changed form, in fulfillment of the contract of the Quernheim Company with Lloyd, the plaintiff did not furnish material that was used in the building, within the scope and meaning of the bond. Suppose a carpenter as subcontractor, should agree with the original contractor to furnish the material, manufacture and put in the doors and windows of a building, and should purchase the material of a lumber merchant and out

of it manufacture the doors and windows at his shop, and then put them in the building, and should fail to pay for the material, could it be contended that the material furnished by the merchant was not used in the building or that he could have no lien for its value? Or suppose a stonemason should agree with a contractor to prepare and put in place all the cut stone called for by the specifications and should purchase the stone in the rough of a quarry man and have it delivered at his shop to be cut, and should there cut and prepare it for the building and then put it in place, and should fail to pay the quarry man for the stone, could it be said that the quarry man furnished no material that was used in the construction of the building and that he had no right of lien on the building for the value of the stone as furnished to the mason? Plaintiff furnished material to be used in the school building and it was used in its changed form for the purpose for which it was furnished, and the plaintiff would have had a right to a lien on the building for the value of the material, had not the building been a public one. I conclude, therefore, that the plaintiff is "nominated in the bond" and was clearly entitled to recover of defendants the value of the material sued for.

2. Defendants' counsel, by a misunderstanding of the court in regard to his position, after the giving and refusing of instructions, was denied the right to argue the case to the jury. Ordinarily this would be reversible error. But the material facts in the case were not in dispute. The value of the material sued for was not controverted by defendants. The only question in the case was as to whether or not plaintiff was entitled to sue on the bond. This was purely a question of law. There were no facts, therefore, to be argued before the jury, and I cannot see wherein the most able and ingenious argument to the jury would have changed the result. A different result would have necessitated the setting aside of the verdict. I do not think, therefore, that

prejudicial error was committed by the refusal of the court to permit the case to be argued to the jury. The judgment is manifestly for the right party and I think it should be affirmed.