PHILIP DEY, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals, June 8, 1909.

1. **NEGLIGENCE: Last Clear Chance Doctrine: Does not Obtain, When.** Where it is obvious that defendant could not have averted the injury after the peril of plaintiff was, or by the exercise of ordinary care could have been, seen, the doctrine of "last clear chance" does not obtain.

2. ———: ———: Demurrer to Evidence: What to be Considered.    In determining whether or not a recovery may be had by plaintiff, under the humanitarian doctrine, it is the duty of the court to allow him not only all he says in his own interest, but also every reasonable inference deducible from his testimony.

3. STREET RAILWAYS: Negligence: Last Clear Chance Doctrine: Demurrer to Evidence: Case Stated.    In an action for personal injuries, where the street car which collided with plaintiff's buggy was travelling at the rate of fifteen miles per hour and there is no testimony tending to show within what distance a car running at this rate can be stopped and where it is obvious from plaintiff's testimony that the car could not have been stopped between the time plaintiff's carriage emerged from behind the building line and the collision, the last clear chance or humanitarian doctrine does not obtain.

4. ———: ———: Speed Ordinance: Failure to Sound Gong. Where an ordinance prohibited the running of street cars at a speed greater than fifteen miles per hour and required the sounding of a gong and it was shown that the street car was operated at a greater rate of speed than fifteen miles per hour and that the gong thereon was not sounded, defendant was negligent.

5. ———: ———: Contributory Negligence Bars Recovery, When.    If plaintiff's negligence concurred in or contributed to his injury, he is not entitled to recover, except under the last chance doctrine.

6. ———: Contributory Negligence: Driving at Such Speed as to be Unable to Stop: Case Stated.    Where plaintiff, who was familiar with the fact that street cars were running both ways with great frequency and at a high rate of speed and whose view of the car tracks was obstructed until he was within twenty-five or thirty feet of the track, drove his team toward the tracks at such a rate of speed as to be unable to check it in time to avert a collision with a car which was one hundred feet distant, when, upon emerging from behind the obstruction, he first observed it, he was guilty of negligence which contributed to, and concurred in, his injury, and hence he was not entitled to recover, the last chance doctrine not being in the case.

Appeal from St. Louis City Circuit Court.—*Hon. Matt. G. Reynolds,* Judge.

REVERSED AND REMANDED (*with directions*).

*G. T. Priest,* for appellant; *Boyle & Priest, Morton Jourdan* and *F. S. Whitelaw* of counsel.

(1) The court erred in setting aside the nonsuit directed herein for the reason that plaintiff's evidence shows that he knowingly undertook to drive across defendant tracks in front of an approaching car going at a rate of fifteen to twenty miles an hour, and that his injuries were the result of his own negligence. Kinlen v. Railroad, 115 S. W. 523; Watson v. Railroad, 133 Mo. 250; Roenfelt v. Railroad, 180 Mo. 554; Cogan v. Railroad, 101 Mo. App. 189; Mockowik v. Railroad, 196 Mo. 571.

*Albert Arnstein* and *Herbert N. Arnstein* for respondent.

(1) "A demurrer to the evidence admits as true every fact which the testimony tends to prove, and every inference which may reasonably be drawn therefrom." Kinlen v. Railroad, 115 S. W. 523; Moore v. Transit Co., 194 Mo. 1. (2) The facts of this case show that appellant was extremely negligent at the time of the collision and that this negligence was the cause of said collision. (3) Where contributory negligence is pleaded, the burden is on the defendant to prove it. Coffey v. Carthage, 200 Mo. 616. (4) Even if, for argument's sake, it be admitted that plaintiff was negligent in attempting to cross the track, still since defendant's motorman, after seeing plaintiff's dangerous situation, negligently failed to slacken speed, the defendant is liable on the last clear chance or humanitarian theory. White v. Railroad, 202 Mo. 539; Deitring v. Transit Co., 109 Mo. App. 524; Cole v. Railroad, 121 Mo. App. 605. (5) The evidence shows plaintiff was not negligent, and took the only course by which the collision might have been averted, and hence defendant's negligence was the sole and proximate cause of collision.

NORTONI, J.—This is a suit for damages alleged to have accrued to plaintiff on account of personal injuries, and otherwise, as the result of a collision between defendant's street car and plaintiff's carriage. At the conclusion of plaintiff's case he suffered an involuntary nonsuit. On his motion, the nonsuit was afterwards set aside and the cause reinstated for trial. From this order the defendant prosecutes the appeal.

It appears plaintiff was the proprietor of a livery stable and had been engaged in driving carriages in the city of St. Louis for many years. At the time of his injury, he was driving south on Twentieth street at the point where that street crosses Olive street in the city of St. Louis. Defendant owns and operates two electric street car lines on Olive street, running east and west. Twentieth street runs north and south. The north street car track on Olive street is occupied by defendant's westbound cars, while the south track thereof is occupied by its east bound cars. The time of collision was about six-fifteen o'clock in the evening. Plaintiff testified that he was driving south on Twentieth street in a jog trot, seated on the box of his carriage, headed for Union Station; that upon reaching Olive street, he looked to the east and saw a street car approaching toward the westward, running at a very rapid rate of speed and about one hundred feet distant from Twentieth street. He whipped up his horses and endeavored to cross the car track before the car reached it. The car collided with his carriage about two feet from its rear. The collision resulted in almost, if not quite, destroying the carriage and inflicting severe and painful injuries upon plaintiff. The testimony discloses that plaintiff's view either east or west on Olive street was obstructed while he was approaching south on Twentieth street until he had almost reached the building line on Olive street. That is to say, the buildings on the north side of Olive street are so compact as to obstruct the view of a person proceeding south on

Twentieth street until the building line is reached. The building situated on the northeast corner of Twentieth and Olive streets, which was between plaintiff and the car, extends to the pavement and therefore serves to obstruct the view until one has about reached the building line. Plaintiff testified he was driving south on Twentieth street, a little west of the center line of that street, and therefore he first observed the approaching street car when he was about twenty-five or thirty feet north of the north car track. The pavement on the north side of Olive street is twelve feet in width and there is a space of about ten feet between the pavement and the north street car track. As stated plaintiff was entirely familiar with the streets and the fact that defendant operated its electric cars both east and west thereon every few minutes. In fact he knew the Olive street car lines to be the most important lines in the city and that at six fifteen in the evening, the cars ran both ways with great frequency; those on the south track going to the downtown district in order to carry passengers to their homes in the West End, and those on the north track, laden with passengers en route to their homes from the day's business. He testified, too, that he knew there was an incline from about Seventeenth street to the westward, almost to Twentieth street. That is, the Olive street car track sloped slightly from the direction in which the car with which he collided was coming, to nearly or about Twentieth street. Plaintiff testified he was driving south at a jog trot, and that upon reaching a point twenty-five or thirty feet north of the Olive street car lines, he saw the defendant's car approaching from the east on the north track very rapidly, about one hundred feet distant, and proceeded to cross the track in front of the same for the reason it was impossible to check his team or turn either to the east or west and avoid the collision. When asked why he did not turn his team to the westward between the

curb and the street car track instead of attempting to drive across the track, he said had he done so the car would certainly have overtaken him while making the turn. and that his only opportunity to avoid the collision was to whip up his horses, as he did, and cross the track. When pressed why he did not stop his team upon seeing the car approaching rapidly from the east, and thus avoid the collision, he explained that his horses were travelling at a rate which rendered it impossible to stop them before reaching the track. And explained, too, that while he was twenty-five or thirty feet north of the north track when he first observed the car, he was seated on the box of his carriage which was about ten feet in the rear of the head of his horses, and that, therefore, instead of having twenty-five or thirty feet in which to stop his team, there was only fifteen or twenty feet of available space therefor. And so it is, all of his testimony goes to the effect that in view of the speed of the team he was driving and the high rate of speed at which the car was approaching, it was impossible for him to avert the accident by either checking his team or turning to the west on Olive street.

The negligence relied upon in the petition for a recovery is: First, that the defendant operated its street car at an exceedingly high rate of speed, in violation of the speed ordinance, which prohibits the operation of street cars at the point in question at a rate of speed to exceed ten miles an hour; second, that the motorman was remiss in the discharge of his duties in failing to keep a vigilant watch for persons upon or approaching the tracks; third, that the motorman failed and neglected to sound the gong and give warning of the approach of the car; and fourth, that by the exercise of ordinary care on behalf of the motorman, the car could have been stopped by him so as to have averted the collision after the plaintiff's situation of peril was disclosed. It may be said, first, that there is positively no proof tending to sustain the allegation that the motor-

man failed to keep a vigilant watch. There is proof, however, which tends to show the street car was being operated in violation of the speed ordinance and at the rate of fifteen miles per hour. There is also proof tending to show that the motorman failed to sound the gong. The case disclosed the defendant to have been negligent in respect of these matters and they will be further considered hereafter.

We come now to examine the matter with respect to the allegation predicated on the humanitarian doctrine; that is, that the motorman, by the exercise of ordinary care on his part, could have averted the collision after having seen, or by the exercise of ordinary care have discovered, the plaintiff's situation of peril. It is entirely clear that the proof is wholly insufficient to show a prima facie case of negligence on this theory. The rule in such cases proceeds upon the theory that although the driver of a vehicle may, through his own negligence, expose himself to the danger of being run upon by a street car, yet if the motorman sees his exposed condition in time, or in some cases, by the exercise of ordinary care, may have discovered his situation of peril, in time to have stopped the car or avoid the injury by employing the means at hand for the purpose and exercising proper care on his part for the safety of those on the car, plaintiff may nevertheless recover, notwithstanding his prior negligence. The doctrine proceeds upon the precepts of humanity and of natural justice to the end that every person shall exercise ordinary care for the preservation of another after seeing him in peril or about to become imperilled, when such injury may be averted without injury to others. The last omission of care in those circumstances, that is, the omission of the motorman, is treated as the proximate cause of the injury. [Klockenbrink v. St. L. & M. R. R. Co., 81 Mo. App. 351; s. c., 172 Mo. 678; Deitring v. Transit Co., 109 Mo. App. 524; Sepetowski v. Transit Co., 102 Mo. App. 110; Nellis on St. Railroads,

384.] From the doctrine thus stated, it is obvious that it may not be invoked in any case unless it appears that defendant could have averted the injury after the injured person is either seen, or by the exercise of ordinary care could have been seen, either in or about to come into a position of peril.  Therefore, where it is obvious that the motorman could not have averted the injury after the perilous situation of the plaintiff was revealed, or might have been discovered by him by the exercise of ordinary care to that end, the doctrine of the last clear chance does not obtain.  Roenfeldt v. St. L. & Sub. Ry. Co., 180 Mo. 554; Rissler v. St. Louis Transit Co., 113 Mo. App. 210; Boyd v. Wabash Ry. Co., 105 Mo. 371.]

Now plaintiff's testimony goes to the effect that although the car was one hundred feet away, it was approaching at such a rapid rate of speed he realized that it was wholly impossible for him to escape by turning to the westward between the pavement and the car line and that his only hope was to whip the horses immediately forward across the track.  By this means he thought to escape injury.  The only other eye-witness to the collision who gave testimony for him shows the car to have been much nearer than one hundred feet at the time he drove upon the tracks.  Indeed, this witness testified point blank that the car was only ten or twelve feet away from plaintiff at the time the pole of his carriage was about the edge of the north car track.  After having stated that the car was about ten or twelve feet from the point of collision when the horses went upon the track, the following questions and answers appear in the testimony of plaintiff's witness:

"Q.  Well, had he gotten to the track then, or was he just approaching the track?  A.  Well, he was just approaching the track.

"Q.  And you say the car was ten or twelve feet away.  A.  Yes, sir.

"Q.  How far was he from the track at the time

you saw the car ten or twelve feet away? A. Why, he was just about hitting the edge of the track then with his pole."

However, we put aside the testimony of this witness and look exclusively to that of plaintiff which, from his statement that the car was one hundred feet away when he first observed it, may possibly be considered more favorable to his interests. It is the duty of the court, in determining this question, to allow to the plaintiff not only all that he says in his own interest but also every reasonable, favorable inference of fact deducible from his testimony in that behalf. [Mockowik v. Railway, 196 Mo. 550.] There is not a syllable of testimony in the case tending to show in what distance a car, running at the rate of fifteen miles an hour, as was this one, could have been stopped by employing the appliances at hand for the purpose, and with due care for the safety of those upon the same. Indeed, everything said by the plaintiff himself touching this question indicates the utter impossibility on the part of the motorman to have stopped the car within the time elapsing between plaintiff's carriage emerging from the building line and the collision. If, as plaintiff testified, it was wholly impossible for him to cross the track without colliding with the car by whipping up his horses to that end after the carriage came into view, it is obvious that it was wholly impossible as well for the motorman to have checked the heavy street car on a downgrade, so as to avoid injuring him. Where it is obvious that the motorman may not stop the car or avert the injury by exercising ordinary care to that end, the last clear chance or humanitarian doctrine does not obtain. [Rissler v. St. Louis Tranist Co., 113 Mo. App. 120; Boyd v. Wabash R. R. Co., 105 Mo. 371; Roenfeldt v. St. L. & Sub. Ry. Co., 180 Mo. 554.]

To put aside, then, the question of defendant's liability under the last clear chance doctrine as not sustained by the proof, the case will be considered solely

with reference to defendant's negligence arising under the speed and gong ordinance and the plaintiff's contributory negligence as well.

It appears the car was running at the rate of fifteen miles per hour and that no gong was being sounded, whereas the ordinance prohibited speed to exceed ten miles per hour, and required the sounding of the gong. It may be conceded the defendant was negligent; but, of course, if plaintiff's negligence concurred in or contributed to his injury, then he is not entitled to recover unless it be under the last chance doctrine, which is not in the case. Now the relevant facts touching this question are as follows: This plaintiff was entirely familiar with the situation. He was sixty years of age and had lived in St. Louis all of his life except about fifteen years. For as much as thirty years of that time he had been engaged in the livery business. He was entirely familiar with the streets and knew that the Olive street car lines were the most important in the city. He testified that he knew of the down grade extending from Seventeenth to Twentieth streets on Olive, down which the cars going to the westward proceeded. He knew that at the time in question, six fifteen in the evening, the street-cars passed back and forth with great frequency over the Olive street line and across Twentieth street, in order to convey the people employed in the downtown district to their homes in the West End. He knew, furthermore, that the cars did not make frequent stops at about every corner in the Twentieth street district as they did in the downtown district. He knew the dangers incident to driving his team and carriage at high speed, upon the car tracks at the point in question at that time in the evening. Now the law is abundantly settled that car tracks are presumptively dangerous, and as frequently said, every intelligent person who has arrived at years of discretion, is presumed to know that it is dangerous to go upon a railroad track when the cars are passing to and fro. In view of these known

dangers, the law affixes the obligation upon a traveller to be vigilant and watchful for the approach of cars. To this end, the law enjoins that he shall look and listen before going upon the tracks and if his vision is obscured so that he may not see, the law enjoins more particularly that he shall vigilantly listen for danger. [Harlan v. St. L., etc., Ry. Co., 64 Mo. 480; Rissler v. Transit Co., 113 Mo. App. 120; Schmidt v. Mo. Pac. Ry. Co., 191 Mo. 215; Laun v. St. L. & S. F. Ry. Co., 216 Mo. 563, 116 S. W. 553; Holland v. Mo. Pac. Ry. Co., 210 Mo. 338.] And it is said by a writer of high reputation: "Where the cars run at a high rate of speed and close together, or where the view is obstructed and there is much noise and confusion, reasonable care imposes a greater degree of caution upon the traveller crossing the tracks than where the cars are run at less speed and farther apart, or where the view is open and the surroundings quiet." [Nellis on Street Railroads, 362.]

Now it appears that the plaintiff drove down Twentieth street with full knowledge of the fact that street cars were running both ways on Olive street with great frequency and at a high speed, his team under such a headway that it was impossible for him to check them and avert a collision therewith. Of course it was impossible for him to see the car before coming within twenty-five or thirty feet of the track had he looked, nevertheless he should have approached the track with more care and it was incumbent upon him to listen, even if he could not see the approaching car, or at least, to have his team under such control as to avert a possible collision when he came into view of possible dangers which a reasonably prudent person would know as likely to attend the situation. It has been decided by courts of high authority that it is contributory negligence for a traveller in approaching a railroad track where the view is obstructed, to drive so rapidly as to drown the noise of moving trains. [Pepper v. Railroad, 105 Cal. 389, 38 Pac. 974; Wilson v. N. Y., etc., Ry. Co., 18 R. I. 598, 29

Atl. 300; Crandall v. Lehigh, etc., Ry. Co., 72 Hun (N. Y.) 431, 25 N. Y. St. 151; McKinney v. Chicago, etc., Ry. Co., 87 Wis. 282, 58 N. W. 386.] And the same has been held, too, of one who occupies such a position in the vehicle as prevents him from seeing an approaching engine. [Atchison, etc., Ry. Co. v. Booth, 53 Ill. App. 303; 3 Elliott on Railroads (2 Ed.), 1164, and numerous cases cited in the notes.]

On this question of how plaintiff approached the tracks, a few excerpts from his testimony will disclose the situation in his own language as well as his attitude toward the car tracks and its dangers.

"Q. Now you said you could not stop after you saw the car coming? A. I could not.

"Q. And you could not pull to the right? A. No, sir.

"Q. Now you knew that the car was likely to come along there at any moment? A. Well, I did, but we do not stop a carriage to wait for a street car to go by. We have got the same privilege that the street car has; pay the same license.

"Q. Now, Mr. Dey, you were driving down there in a jog? A. Yes, coming down a hill.

"Q. Coming to the car tracks where you might expect a car at any moment? A. Yes, sir.

"Q. You were driving that fast approaching that track and knowing that a car might come, when you could not stop the horses after you got by the building line, could you? A. No, sir.

"Q. You said a moment ago that you could not stop the horses after you came to the building line? A. No, I could not.

"Q. You could not? A. No.

"Q. You drove down there at that rate of speed, in a jog, when you knew that a car might come any moment, didn't you? A. I knew it, yes.

"Q. You could slow down? A. It wasn't possible

for me to slow up. If I had slowed up it would have killed me."

Now, touching the duty of a person approaching car tracks, as in this case, under such a headway of speed as to render it impossible to stop the team and avert a collision, the Supreme Court of Virginia has aptly said: "The mere fact of looking and listening is not always a performance of the duty incumbent upon the traveller, *for he must also exercise care to make the act of looking and listening reasonably effective.* He must not approach the track at such a rate of speed that when he reaches the point where he can see or hear the train it is too late to protect himself from injury. He must exercise ordinary care in attempting to cross, or in crossing the track, and care is never ordinary care unless it is proportionate to the known danger. [3 Elliott on Railroads, sec. 1164, 65, 66, 2 Shearman & Redfield on Negligence, secs. 476, 478.]" (The italics are our own.) See Washington, etc., Ry. Co. v. Lacey, 94 Va. 460, 475. In order to perform the obligation which the law enjoins upon the plaintiff to look and listen, it was incumbent upon him to be in a position to avail himself of the warning communicated by his sense of hearing and sight. If it was impossible, as it was, for him to see or hear the approaching car before emerging from the building line, it was incumbent upon him then to approach the car tracks known to be dangerous, in such a manner as to be able to avoid a collision if a car were observed approaching. This obligation he voluntarily violated by driving into a known danger at such a rate of speed as to be unable to stop his team and avert the collision. The standard which the law sets up and by which the conduct of others shall be ascertained and measured, is that of an ordinarily prudent person under the existing circumstances. [Loehring v. Westlake Const. Co., 118 Mo. App. 163, 178, 179.] It is obvious that a reasonably prudent person attending to the above mentioned obligation which the law affixes upon him,

would have approached this place of known danger under the circumstances in evidence by driving his team at such a rate as to be able to check the same and avert injury after seeing the approaching car.  It is immaterial whether he was travelling in a jog trot, as he stated, or otherwise.  The bold and predominating fact in the case, from his own testimony, is that his team was traveling at such a rate at the time he first observed the car, as rendered him wholly unable to check it and avert a possible collision.  In this view, it is clear plaintiff's negligence contributed to and concurred in his injury.  For that reason, the order of the trial court setting aside the order of nonsuit will be reversed and the cause remanded with directions to enter judgment according to the views herein expressed. *Reynolds, P. J.,* concurs; *Goode, J.,* concurs in result.