ALBERT R. CHAPPELL, Appellant, v. UNITED RAILWAYS COMPANY of St. Louis, Respondent.

St. Louis Court of Appeals, May 6, 1913.

1. **STREET RAILWAYS: Crossing Collision: Vigilant Watch: Failure to Stop Car: Evidence: Inferences.** An inference that the motorman of a street car was not keeping a vigilant watch ahead and did not use every effort to stop the car after danger became apparent could not be drawn from the fact that he failed to stop the car in time to avert a collision with a vehicle crossing the track, where the evidence showed that, when he could have first seen the vehicle, the car was only one hundred feet from the point of collision, but did not show within what distance the car, which was traveling at the rate of twenty-five or thirty miles an hour, could have been stopped.

2. ———: ———: **"Vigilant Watch Ordinance:" Sufficiency of Evidence.** In an action for damages to an automobile in a collision with a street car at a street crossing, the evidence showed that, when the motorman could have first seen the automobile, the car was only one hundred feet from the point

of collision, but did not show within what distance the car, which was traveling at the rate of twenty-five or thirty miles an hour, could have been stopped, nor that the motorman was not keeping a vigilant lookout and did not make every effort to stop the car after the danger became apparent. *Held*, that a recovery could not be had under the "Vigilant Watch Ordinance" of the city of St. Louis, requiring motormen to keep a vigilant watch for persons and vehicles on the track or moving toward it, and, on the first appearance of danger, to stop the car in the shortest time and space possible, since, in order to warrant a recovery under this ordinance, it was necessary for plaintiff to show that the car, traveling at the rate it was, could have been stopped in time to have averted the collision, after the motorman could have seen the automobile.

3. ——: ——: **Failure to Stop: Negligent Speed.** The fact that a motorman of a street car makes every effort to avoid injury after discovery of the danger and finds it impossible to do so, will not excuse the street railway company if the motorman was guilty of prior negligence in running the car at an unlawful rate of speed and thereby created the impossibility.

4. ——: ——: ——: **Evidence: Inferences.** In an action for damages to an automobile in a collision with a street car at a street crossing, it was shown that, when the motorman could have first seen the automobile, the car was only one hundred feet from the point of collision, and that the car was traveling at the rate of twenty-five or thirty miles an hour when it was one hundred feet away and fifteen to eighteen miles an hour when the collision occurred. *Held*, that an inference could not be drawn that the car could have been stopped in time to have averted the collision.

5. **NEGLIGENCE: Contributory Negligence: How Established.** A plea of contributory negligence is an affirmative defense, the burden of establishing which rests upon defendant, but, in carrying this burden, defendant may avail himself of evidence offered by plaintiff, and it is not necessary that defendant introduce testimony to substantiate his plea.

6. **STREET RAILWAYS: Contributory Negligence: Failure to Look and Listen.** Street car tracks in a street are in themselves a signal of danger, and the law imposes upon one crossing them the duty of looking and listening, before going on them.

7. ——: **Crossing Collision: Contributory Negligence.** Where, in an action for damages to an automobile in a collision with a street car at a street crossing, defendant pleaded contributory

negligence of the driver, evidence by the driver that he knew the track crossed the street at the point in question, that, after passing a building that obstructed his view, he could see a car approaching, seventy-five to one hundred feet away, that the automobile was going very slowly, from three to four miles an hour and he could have stopped it in four or five feet, was sufficient to raise the issue of contributory negligence in failing to look or listen and authorize its submission to the jury, although he also testified that he looked and listened before going upon the track.

8. **EVIDENCE: Opposed to Physical Facts: Conclusiveness.** A witness' testimony is not conclusive, although no witness testifies to a contrary state of facts, especially where the physical facts tend to contradict it.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

AFFIRMED.

*Robert L. McLaran* for appellant.

(1) Under the common law as well as under the city ordinances, it was the duty of the motorman to keep a vigilant watch for persons and vehicles, either on or moving towards the track. Sepetowski v. Transit Co., 102 Mo. App. 110; Riska v. Railroad, 180 Mo. 168; Sludder v. Transit Co., 189 Mo. 107; Deschmer v. Railroad, 200 Mo. 310. (2) The degree of care required depends upon the attendant circumstances and these may require the motorman not only to look ahead but also to have his car under control. In fact, to keep a vigilant watch means not only to look ahead in order to discover danger, but it means also that the motorman should be prepared to avert the danger, especially in those places where he has every reason to expect it. Frick v. Railroad, 75 Mo. 595; Hoverka v. Transit Co., 191 Mo. 441; Deitring v. Transit Co., 109 Mo. App. 524; Funck v. Street Railway Co., 133 Mo. App. 419; Qube v. Transit Co., 103 Mo. App. 582. (3) A greater degree of care is required at street cross-

ings than when running longitudinally in a street or between streets of a city. Frick v. Railroad, 75 Mo. 595. (4) No particular rate of speed is lawful, regardless of conditions. Holden v. Railroad, 108 Mo. App. 665; Beier v. Transit Co., 197 Mo. 215. (5) It is not necessary to prove by direct evidence that the motorman was not keeping a vigilant watch. This may be inferred from the circumstances. Batsch v. United Railways Co., 143 Mo. App. 58; Riska v. Railroad, 180 Mo. 168; Moore v. Transit Co., 194 Mo. 1. (6) Contributory negligence is an affirmative defense, and the burden of proving it rests upon the defendant. Weller v. Railroad, 164 Mo. 199; Latson v. Transit Co., 192 Mo. 451; Schmidt v. Railroad, 149 Mo. 269; Schroeder v. Transit Co., 111 Mo. App. 67; Hovarka v. Transit Co., 191 Mo. App. 441; Eckhard v. Transit Co., 190 Mo. 593. (7) In the absence of direct evidence or rebutting circumstances, one in attempting to cross a railroad track will be presumed to have been in the exercise of due care. Weller v. Railroad, 164 Mo. 198; Crumpley v. Railroad, 111 Mo. 157. (8) The doctrine of contributory negligence is qualified and limited by the "humanitarian doctrine." Latson v. Transit Co., 192 Mo. 451; Beier v. Transit Co., 197 Mo. 215. (9) The vigilant watch ordinance is simply a declaration of the "last chance or humanitarian doctrine." Gebhardt v. Transit Co., 97 Mo. App. 373. (10) No expert testimony was necessary to show that if the car had been under proper control and proceeding at a lawful rate of speed it could have been stopped in time to have avoided the accident. Latson v. Transit Co., 192 Mo. 449; Beier v. Transit Co., 197 Mo. 215. (11) If the failure to avoid the collision was due to the excessive and unlawful rate of speed at which the car was traveling, the defendant is still liable, although the car was stopped in the shortest time and space possible after the danger was discovered.

Williams v. Railroad, 149 Mo. App. 489; Murrell v. Railroad, 105 Mo. App. 88; Rapp v. Transit Co., 190 Mo. 144; Eswin v. Railroad, 96 Mo. 290.

*Morton Jourdan* and *Paul U. Farley* for respondent; *Boyle & Priest* and *T. E. Francis* of counsel.

(1) Plaintiff was not entitled to have his case submitted to the jury under the vigilant watch assignment or "last chance doctrine," for the reason that he failed to show that, at the speed at which the car was running, it could have been stopped after the motorman saw, or could have seen, the automobile in a position of danger. Zurfluh v. Railroad, 46 Mo. App. 636; Koegel v. Railroad, 181 Mo. 379; Theobald v. Transit Co., 191 Mo. 395; Dey v. Railroad, 140 Mo. App. 461; Paul v. Railroad, 152 Mo. App. 577; Roenfeldt v. Railroad, 180 Mo. 544; Guyer v. Railroad, 174 Mo. 344; Marcowitz v. Railroad, 186 Mo. 350; McGee v. Railroad, 214 Mo. 530; Hawkins v. Railroad, 135 Mo. App. 524. (2) The negligence of plaintiff's driver was a question for the jury under his own testimony, and defendant therefore had the right to have it submitted.

ALLEN, J.—This is an action to recover the value of an automobile belonging to appellant, which was struck by two of respondent's street cars at a public street crossing in the city of St. Louis and demolished. The cause was tried before the court and a jury, resulting in a verdict for defendant, and plaintiff appeals.

It appears that on January 5, 1908, at about 6:30 p. m., a young man was riding in and driving plaintiff's automobile and was proceeding in a southerly direction along Clarendon avenue, a public street in the city of St. Louis, approaching the intersection of said street with the street railway tracks of defendant.

Through this portion of the city this line of defendant's street railway is operated over a private right of way, except where the tracks intersect the streets. In approaching and crossing Clarendon avenue from the east, the tracks, instead of continuing west, curve toward the north. In crossing this street they extend in a general direction from southeast to northwest, and after crossing it continue to curve toward the north. There are two tracks of defendant at this crossing. Its westbound cars run on the northern track, and its eastbound cars on the southern track. In going south on Clarendon avenue, and while crossing the first or northern track, plaintiff's automobile was struck by a westbound car, and pushed along the tracks for some twenty feet, when it was also struck by an eastbound car on the other track, and crushed between the two cars and demolished.

Plaintiff pleads what is known as the "vigilant watch ordinance" which provides that those operating the car shall keep a vigilant watch for all vehicles and persons on foot, either on the track or moving toward it, and on the first appearance of danger to such vehicles or persons, the car shall be stopped in the shortest time and space possible; which ordinance also provides that all street cars after sunset shall be provided with signal and headlights, and that no car shall be drawn or propelled at a speed greater than fifteen miles per hour in that portion of the city in which defendant's car was being operated at the time. And plaintiff charges that the defendant's employees and agents in charge and control of its car negligently and unlawfully ran and operated the car, as it approached Clarendon avenue, "at a very high, negligent and unlawful rate of speed, to-wit, at the rate of about twenty-five miles per hour." It is also averred in the petition that it was dark at the time, and that defendant, its agents and employees, negligently failed to have any headlight or other signal light

lighted and burning on the car, negligently failed to ring any bell or sound any gong or otherwise give warning of the approach of the car as it neared Clarendon avenue, negligently failed to keep a vigilant watch for vehicles or persons on foot who might be on the track or moving towards it, and negligently failed to stop or check the speed of the car, in the shortest time and space possible, when they saw the dangerous situation of plaintiff's said automobile and the occupants thereof.

The answer is a general denial, coupled with the averment that whatever damages, if any, plaintiff sustained, were caused by the negligence and carelessness of plaintiff's driver in charge of plaintiff's automobile. The reply denies the allegations of the negligence of plaintiff's driver contained in the answer.

Inasmuch as the assignments of error pertain only to the giving and refusing of instructions, it would serve no useful purpose to review the evidence further than to refer to such portions thereof as are material to the questions before us, and which we shall do in considering the instructions in the case.

At the close of plaintiff's case defendant, after offering a peremptory instruction in the nature of a demurrer to the evidence, which was refused by the court, stood upon its demurrer and offered no evidence.

I.   The first error assigned is the refusal of the court to give, as offered, an instruction at the request of plaintiff, to the effect that if the jury believed from the evidence that the agents and servants of defendant in charge and control of its car failed to use and exercise ordinary care in the operation thereof, under the existing circumstances, "either by operating said car at an excessive rate of speed having regard to the crossing which it was then approaching, or by failure to sound a gong or ring a bell or give some

other warning to the driver of said automobile as it approached Clarendon avenue, *or by failing to keep a vigilant watch for all vehicles or persons on foot either on the track or moving towards it or by failing on the first appearance of danger to the plaintiff's automobile to stop its car or cars in the shortest time and space possible,"* etc., then, finding that the person in charge of plaintiff's automobile exercised ordinary care in the premises, the verdict should be for plaintiff.

The court refused to give this instruction as offered, but modified it by striking out the words which we have italicized above, and gave it as modified. Appellant insists that this was error. His contention in this regard is, that there were facts and circumstances in the case from which the jury might have properly inferred that the motorman was not keeping a vigilant watch, or was negligent with respect to stopping the car, and that plaintiff was therefore entitled to go to the jury upon this assignment of negligence, as well as upon those embraced within the instruction as given.

Appellant says that the vigilant watch ordinance is declaratory of the humanitarian doctrine, and respondent says that this is correct; but from an examination of the evidence we are of the opinion that this doctrine has no place in the case, and that a recovery cannot be had upon the assignment of negligence in question. There was evidence of negligent speed of the car, of failure to have the car equipped with a headlight or signal light, and of failure to sound a gong or give other warning of the approach of the car, sufficient to take these questions to the jury; and they were submitted to the jury by this instruction. We think, however, that the evidence failed to bring the case within the rule entitling plaintiff to have submitted to the jury the question of the negligence of defendant's agents and servants in charge of its car in failing to keep a vigilant watch or in failing to stop

the car after discovering the dangerous situation of the automobile.

As we have said, the tracks curve on both sides of this crossing, and plaintiff's evidence shows that there was a building on the corner of the street, at its intersection with defendant's right of way, obstructing the view to the east until one is within a few feet of the track; that, due to the obstruction and the curvature of the tracks, one approaching the track from the north, as was plaintiff, could not see a car approaching from the east at any great distance. The most favorable view of the testimony of plaintiff's driver is that, after one passed the building line, he could see a car to the east one hundred feet from the point of the collision, and consequently this must be taken to mean that the motorman could not have seen the automobile in a position of danger more than about one hundred feet from it. The testimony of plaintiff's driver was that defendant's car was running from twenty-five to thirty miles per hour. The testimony of the other witnesses throws but little light upon the question of the speed of the car. Miss Bessie Turner, who was an occupant of the automobile, testified that the car was going very fast. Another witness testified that he saw the car just about the time that it struck the automobile, and he judged that at about the time of the collision it was going fifteen to eighteen miles per hour. His testimony however affords no satisfactory basis from which to determine the speed of the car when it was about one hundred feet away.

There is no actual testimony whatsoever that the motorman was not keeping a vigilant lookout, or did not use every effort to stop the car after the danger became apparent; and the question is purely whether, from the facts and circumstances in evidence, it could be inferred that the motorman was negligent in either respect. Such inference could only be drawn from the fact that he did not stop the car in time to avoid the

collision; but this inference is not here available to plaintiff for the reason that there is not a scintilla of evidence to show within what distance the car could have been stopped, going at the rate of speed indicated by plaintiff's evidence. Under the evidence, to justify the submission of the case upon this theory it was necessary for plaintiff to show that the car, going at the rate of speed which his evidence tends to show that it was traveling, could have been stopped within such distance as it appears that the motorman could have seen the automobile. Evidently if the car could not have been stopped within such distance, defendant's agents and servants in charge thereof could not be held to be guilty of negligence in failing to stop it (whatever may have been their negligence in respect to the speed of the car, or in failing to sound a warning of its approach), and plaintiff's loss could not be said to be due to a failure to keep a vigilant watch.

Upon this question we cannot do better than to quote from the opinion in Dey v. United Railways Co., 140 Mo. App. 461, 120 S. W. 134, concerning the application of the so-called humanitarian doctrine to a like situation, where this court speaking through NORTONI, J., said:

"From the doctrine thus stated, it is obvious that it may not be invoked in any case unless it appears that defendant could have averted the injury after the injured person is either seen, or by the exercise of ordinary care could have been seen, either in or about to come into a position of peril. Therefore, where it is obvious that the motorman could not have averted the injury after the perilous situation of the plaintiff was revealed, or might have been discovered by him by the exercise of ordinary care to that end, the doctrine of the last clear chance does not obtain. [Roenfeldt v. St. L. & Sub. Ry. Co., 180 Mo. 554; Rissler v. St. Louis Transit Co., 113 Mo. App. 210; Boyd v. Wabash Ry. Co., 105 Mo. 371.] . . . There is

not a syllable of testimony in the case tending to show in what distance a car, running at the rate of fifteen miles an hour, as was this one, could have been stopped by employing the appliances at hand for the purpose, and with due care for the safety of those upon the same. . . . Where it is obvious that the motorman may not stop the car or avert the injury by exercising ordinary care to that end, the last clear chance or humanitarian doctrine does not obtain.''

In this connection see, also, Markowitz v. Railroad, 186 Mo. 350, 85 S. W. 351; Theobald v. Transit Co., 191 Mo. 396, 90 S. W. 354; McGee v. Railroad, 214 Mo. 530, 114 S. W. 33; Ellis v. Metropolitan Street Railway, 234 Mo. 657, 138 S. W. 23; Burge v. Railroad, 244 Mo. 76, 148 S. W. 925; Hawkins v. Railroad, 135 Mo. App. 524, 116 S. W. 16.

It is true, as appellant suggests, that although defendant's agents and servants used every effort to avoid the injury after discovering the dangerous position of plaintiff's automobile and found it impossible to do so, nevertheless that will not excuse the defendant, if its agents and servants were guilty of prior negligence which created the impossibility. That is to say, if the motorman was unable to stop the car because of negligence in running it at an unlawful rate of speed, thereby disabling himself from so stopping it, defendant is not excusable from liability. [See Williams v. Railroad, 149 Mo. App. l. c. 491, 131 S. W. 115, and cases cited.] But this does not affect the question before us; for the instruction with which we are dealing authorizes a recovery on the ground of the negligent speed of the car, thereby submitting this question to the jury.

The contention is also made that ''no expert testimony was necessary to show that, if the car had been under such control and proceeding at such a reasonable rate of speed, as the dangerous character of the crossing required, it could have been stopped in time

to avoid the accident.'' In this connection we are re-
ferred to the cases of Latson v. Transit Co., 192 Mo.
449, 91 S. W. 109, and Beier v. Transit Co., 197 Mo.
215, 94 S. W. 876. In the Latson case it was said
that no expert testimony was necessary to show that
a car traveling at the rate of six and one-half or seven
miles an hour could have been stopped in a distance
of forty feet. In the Beier case there was evidence
that the car was actually stopped in its own length
plus eight or ten feet. In the case before us the facts
in evidence are not such as to justify the inference
that the car could have been stopped within the dis-
tance at which it appears the motorman might have
discovered the automobile, and there is no positive tes-
timony touching this question whatsoever.

Our conclusion is, that the court did not err in
modifying plaintiff's instruction in the manner indi-
cated above. This also disposes of the assignment of
error with respect to the giving of an instruction for
defendant to the effect that plaintiff was not entitled
to recover on the assignment of negligence which we
have just been discussing.

II. The remaining assignment of error pertains
to the giving of an instruction offered by defendant
telling the jury that it was the duty of the driver of
plaintiff's automobile to look and listen for the ap-
proach of cars before going on the track, and that if
the jury found from the evidence that, when the driver
approached the track, ''if he had looked he could have
seen the car approaching, or if he had listened could
have heard the car approaching, and that he drove up-
on the track without looking, or, if he did look, without
heeding what he saw, and without listening, or without
heeding what he heard,'' then plaintiff was not en-
titled to recover.

Appellant urges that this instruction should not
have been given, for the reason, as he says, that con-

tributory negligence is an affirmative defense and the burden of proving the same rested upon the defendant; and further that there was no evidence of contributory negligence on the part of the driver.

We think that there was no error in giving this instruction. The pleadings made the question of the contributory negligence of the driver of plaintiff's automobile an issue in the case. It was, of course, an affirmative defense, and the burden of establishing it was on the defendant. Nevertheless in carrying that burden it was not essential that defendant introduce testimony of its own. If plaintiff's own proof tended to establish such contributory negligence, it was available to defendant in support of the allegations of its answer. And we think that it cannot be said that there was no evidence in plaintiff's case of the driver's contributory negligence. Plaintiff seems to have recognized that there was evidence from which it might be inferred that plaintiff's driver was negligent in the premises, for plaintiff very properly submitted that issue in the instruction which it requested the court to give. Plaintiff's driver testified that he knew the tracks crossed the street at this point. They were of course a signal of danger, and the law imposed upon him the duty of looking and listening before going upon them.

While there was direct testimony that the driver looked in both directions, and listened, before going upon the tracks, there were circumstances in evidence from which the inference may be drawn that he did not look and listen, or did not heed what he saw and heard. It appears that the building which obstructed the view to the east stood some ten or twelve feet back from the tracks. The driver of the automobile testified that after passing the building line one could see a car from seventy-five to one hundred feet away. He further testified that the automobile was going very slowly—about three or four miles per hour—and

could have been. stopped in four or five feet. - His failure to stop it, and thus avoid the collision, under the circumstances in evidence, was a matter to be taken into consideration in connection with the testimony that he looked and listened before going on the tracks. The latter testimony was, of course, not conclusive. [See Gannon v. Laclede Gas Light Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907.] And especially since the physical facts must be said to have had some tendency at least to contradict it. In our judgment the facts and circumstances in evidence were sufficient to warrant the giving of this instruction.

A careful examination of the record reveals no reversible error, and hence the judgment of the circuit court must be affirmed. It is so ordered. *Reynolds, P. J.*, and *Nortoni, J.*, concur.