## MARY ANN HOLLAND v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Division Two, March 17, 1908.

1. **NEGLIGENCE: Track in Street: Duty to Pedestrian.** A railroad company in running its train over tracks laid in a public street, owes to an adult and well-informed pedestrian walking between the tracks towards a cross-over track, no greater duty than to exercise ordinary care and caution in looking out for and avoiding injuring him.

2. ———: ———: **Duty of Pedestrian.** Every person who goes on a railroad track, or proposes to cross a cross-over track connecting the two main tracks laid in a public street, must use his eyes and ears to avoid injury; and every intelligent person who has arrived at the years of discretion is presumed to know that it is dangerous to be on a railroad track when trains are passing to and fro, and is expected when crossing one to be vigilant and watchful of the approach of a train. Failure to exercise such vigilance is negligence *per se.*

3. ———: ———: **Cross-Over Track: Demurrer.** The city ordinance prohibited the running of a train in excess of five miles per hour, and it is assumed that a violation of that ordinance would be negligence *per se.* Two railroad tracks were laid in a

Holland v. Railroad.

public street, and between them was a cross-over track from the west track to the east. South-bound passenger trains left the west track and proceeded over this cross-over track to the east track, and freight trains proceeded south on the west track. A witness testified that he saw defendant's passenger train pass him 1200 feet north of the cross-over track, going south, at a speed of twenty-five miles per hour; that the train whistled; that plaintiff's husband was struck at the frog or point where the cross-over track converged with the west rail of the east track; that he did not think the train made a stop after it passed him, and that he heard three sharp whistles and the train stopped near the frog. The fireman, also a witness for plaintiff, testified that the train almost stopped near the frog on the west track because another train below the frog on the east track was taking water, that the train then moved forward over the cross-over track, and he saw plaintiff's husband about the south frog walking north between the two tracks; that he was not then in a position of danger, and he gave no warning to the engineer; that he rang the bell; that the train was moving about five miles per hour at the time; that the engine cab obstructed his vision, but that the train did not run more than fifteen or twenty feet more before the air brakes were applied, and that the train stopped in twenty-five or thirty feet. Plaintiff's husband had once worked for six months in the yards, and lived in the community at the time, and is therefore held to have been acquainted with the fact that south-bound passenger trains took the cross-over track. The time was 8:10 p. m. of a February day, and the head light "made it as bright as day." *Held*, that a judgment for plaintiff cannot stand. The proximate cause of her husband's injury was his contributory negligence in going upon the track in close proximity to an approaching train.

Appeal from Buchanan Circuit Court.—*Hon. Henry M. Ramey,* Judge.

REVERSED.

*Martin L. Clardy* and *Ben. J. Woodson* for appellant.

The demurrer offered to the evidence of plaintiff, by the defendant, should have been sustained for the following reasons: First. There was not a particle of evidence which tended to show that the train which struck Holland was running in excess of five miles an

hour at the time he was killed. Second. There was not a syllable of evidence offered tending to show the bell of the locomotive was not being rung when Holland was struck. Harlan v. Railroad, 64 Mo. 480; Taylor v. Railroad, 86 Mo. 462; Purl v. Railroad, 72 Mo. 171; Hallihan v. Railroad, 71 Mo. 113; Turner v. Railroad, 74 Mo. 605; Kelley v. Railroad, 75 Mo. 141; Stepp v. Railroad, 85 Mo. 235; Kelley v. Railroad, 88 Mo. 548; Yancey v. Railroad, 93 Mo. 437; Hanlon v. Railroad, 104 Mo. 388; Jennings v. Railroad, 112 Mo. 275; Prewitt v. Eddy, 115 Mo. 302; Baker v. Railroad, 122 Mo. 573; Lane v. Railroad, 132 Mo. 27; Payne v. Railroad, 136 Mo. 576; Dlauhi v. Railroad, 139 Mo. 296; Schmidt v. Railroad, 191 Mo. 228. Third. It is argued that the company was liable, although Holland was injured through his own negligence by going upon the track in front of the engine if the defendant negligently failed to discover his dangerous position, when by the exercise of ordinary care on the part of the employees they would have discovered the danger and could have averted the calamity. This rule of law is too well grounded in our jurisprudence to need the citation of authorities to support it, and at this late date it is too well rooted therein to justify us in assailing its wisdom or justice. But that rule only applies to cases where "the approximate cause of the injury was the omission of defendant, after becoming aware of the danger to which the plaintiff was exposed, to use a proper degree of care to avoid injuring him . . . or if the company failed to discover the danger through the recklessness of its employees when the exercise of ordinary care would have discovered the danger and averted the calamity." Scoville v. Railroad, 81 Mo. 440; Harlan v. Railroad, 64 Mo. 480; Harlan v. Railroad, 65 Mo. 22; Donohoe v. Railroad, 83 Mo. 554; Williams v. Railroad, 96 Mo. 280.

*W. K. Amick, T. F. Ryan, F. G. Chase* and *G. A. Smith* for respondent.

The court properly overruled defendant's demurrer. There was ample evidence from which the jury could infer that the speed of the train exceeded five miles per hour. Hahn says that the train was running twenty-five miles per hour when it passed him. He was then about 1,200 feet north of where Holland was killed. After the train passed him, he had gone north about one hundred feet and "walking fast," when he heard the engine whistle an alarm. He turned around and it looked to him like the train "was pretty near stopped." It was then at Cedar street and Holland had been struck. From this evidence it seems that the train ran 1,200 feet while Hahn walked one hundred feet. If he walked only two miles per hour, the train must have traveled at the rate of twenty-four miles per hour. The train did not stop after it passed Hahn until after the deceased was struck. Another fact that shows that the train was exceeding a speed of five miles per hour was the distance the train ran after the brakes were applied. The brakes were applied within twenty feet after the fireman lost sight of him but the train was 150 feet away when he passed out of the fireman's view, for they were then just entering the cut-off, and the map shows it was 150 feet. So the brakes were applied when the train was about 130 feet from Holland. After he was struck, the train then ran about seventy-five or eighty feet. The marks show that he was dragged forty feet and he was taken out from under the engine twenty-five feet back of the pilot. So that the train actually ran about 200 feet after the brakes were applied. Running at the rate of five miles per hour, the train could have been stopped in twenty-five or thirty feet. We are mindful that the fireman said the train was not exceeding five miles per hour, but we are not bound by his statement. He

also says that his train stopped and waited for the "Q" train to take water, but he is contradicted by Hahn who says the "Q" train was not at the water tank when he came out on Cedar street, nor did any passenger train, except the defendant's train, pass him as he went north. It must be remembered that the fireman, Rehard, was still in defendant's employ at the time of the trial, and that he was to blame for the death of the deceased. We are not bound by all of his statements, even if he was our witness, as there was other evidence which contradicted him. Holland v. Railroad, 105 Mo. App. 124. The deceased evidently knew of the presence of the train on the west track. This was conceded by both sides. But he did not know that it was going to take the cross-over. The fact that he saw the headlight did not notify him that the train was coming on the cross-over. Nor did he know that it would come on that track. If he had stepped towards the west and got on the west track and the train continued down that track and struck him, he would have been negligent, for that was the main track. Now they say he was negligent because he went the other way. He was not presumed to know anything about the operation of the night trains on those tracks. He had no warning that the train was approaching him on the cross-over track, even if he did see the headlight. When the fireman last saw Holland, he was then between the tracks opposite the cross-frog and at this point the map shows the tracks were not over five and one-half feet apart. He was walking north and every step he took the tracks came closer together and he was in greater danger—a few steps took him on the cross-over. After they saw him in danger, there was plenty of time to stop, if they were running only five miles an hour, but they did not try to stop, nor did they whistle or warn him.

BURGESS, J.—This suit was instituted by plaintiff to recover the statutory penalty of five thousand dollars for the death of her husband, John Holland, who was killed by one of defendant's engines through the alleged negligence of defendant's servants in operating said engine.

The deceased was run over and killed on February 25, 1904, about 8:10 p. m., by one of defendant's engines attached to a passenger train going south on Fifth street, in the city of St. Joseph. This street ran north and south, and the Burlington Railway Company had its tracks laid thereon for a distance of seven or eight blocks, and the defendant, under a contract with the Burlington company, operated its trains over the same tracks. The street, while occupied by railroad tracks, was also used as a public thoroughfare by pedestrians. There were two main tracks on Fifth street, the east track being used for north-bound trains, and the west track for south-bound trains.

Cedar street crosses Fifth street, and north of Cedar street is a cross-over track connecting the two main tracks, which cross-over track connected with the west track at a point about 225 feet north of Cedar street, and connected with the east track at the north line of Cedar street. All passenger trains going south took this cross-over, passing from the west to the east track, but all freight trains going south did not do so, but kept on the west track. There was a switch at each end of said cross-over track, and switchmen to operate them.

John Holland, the deceased, was about sixty years of age, and was a section hand in the employ of the Burlington railroad at the time he was killed. He was walking north on Fifth street between the two main tracks, and was struck by the engine of the train when he reached the cross-over track, while the engine was crossing from the west to the east track. The head-

light on the engine was shining brightly at the time, and there was no obstruction to prevent deceased from seeing the approaching train.

A. H. Rehard, who was fireman on the engine in question, testified that he saw Holland walking north between the tracks. The last time he saw him before he was struck Holland was at "about the south frog between the two tracks," and was still coming north. As the engine had at this time entered the cross-over track, and was headed in a southeasterly direction, witness, who was on the left side of the engine, was unable to see Holland after that, the engine obstructing his vision. He did not think deceased was at the time in a position of danger, and he gave no warning to the engineer. He said he rang the bell continually from the time the train left the Union station up to the time deceased was struck; that the train was running about five miles an hour at the time he last saw deceased between the tracks; that a train going at that rate of speed could be stopped in twenty or twenty-five feet by use of the air brake; that from the time he last saw the man before he was struck the train did not run more than fifteen or twenty feet before the air brakes were applied, and that the train ran twenty-five or thirty feet after the application of the air-brakes. This witness also testified that the train stopped or almost stopped at Oak street, which was one block north of Cedar street, for the reason that the east track was blocked by a Burlington train which was standing at the water tank south of Cedar street, the rear car of the Burlington train being about on a line with the north line of Cedar street, and that the engine on which witness was did not cross over till the Burlington train had pulled out.

Witness Frank Hahn, testifying for the plaintiff, said that he was a laborer and had been around railroads all his life. He lived on the corner of Fifth and

Cedar streets, and on the night in question he was going up town on 5th street. When within about fifty feet of Sycamore street, which was the fourth street north of Cedar, a Missouri Pacific passenger train passed him going south, which he said was running at a speed of twenty-five miles an hour. There was no bell ringing on the train as it passed by him. Just as he reached the other side of Sycamore street he heard the train whistle several times in quick succession, from which he understood that there was a man or some obstruction on the track. He looked back and saw the train standing near Cedar street. Going back to where the train was he found that Holland had been removed from under the engine, the front end of which, he judged, was opposite a switch stand on the north side of Cedar street. The next day witness examined the place on the track where deceased was run over, and noticed that some object had been dragged along the track which made an impression in the ground about half an inch deep for a distance of about forty feet. The dragging, he said, had been done along the west rail of the east track, and commenced at the frog or point where the cross-over track converged with the west rail of the east track. Witness did not know what had made this impression, but thought it was made by a sack of coal which deceased had with him. He did not see any train standing south of Cedar street as he got on the track that evening, as testified to by witness Rehard, nor did he think that the Missouri Pacific train which passed by him and killed the deceased made any stop after it passed by him until deceased had been killed.

Plaintiff in her petition pleaded, and also introduced in evidence, over the objection of defendant, section 2 of a special ordinance of the city of St. Joseph granting the Burlington Railroad the right to lay and maintain tracks on Fifth street, which section provided:

"Said railroad company shall not have the right to run their cars over the right of way herein granted at a greater rate of speed than five miles per hour, and the city council may by ordinance prescribe the penalty for violation of this section."

Plaintiff also pleaded in her petition, and introduced in evidence, sections 1 and 6 of a general ordinance of the city of St. Joseph, which are as follows:

"Section 1.  No locomotive engine, railroad passenger car or freight car shall be driven, propelled or ran upon or along any railroad track within said city at a greater speed than the rate of five miles per hour."

"Section 6. *Bell to be Rung.* The bell of each locomotive engine shall be rung continually while running within said city."

The defendant offered no testimony, but at the close of plaintiff's case asked for a peremptory instruction to find for the defendant, which was by the court refused, and defendant excepted.

The jury returned a verdict for the plaintiff in the sum of $5,000, and judgment was rendered accordingly, from which judgment, after ineffectual motions for a new trial and in arrest, defendant appeals.

Defendant insists that there is no evidence whatever to support the verdict of the jury.

There were but two witnesses whose testimony tended to show how the accident occurred, both being introduced by the plaintiff, one of said witnesses, A. H. Rehard, being fireman upon defendant's train at the time of the accident, the other witness being Frank Hahn, a laborer, who lived at that time at the northwest corner of Cedar and Fifth streets. The latter's testimony was that when the train passed him at Fifth and Sycamore streets it was, in his judgment, running at the rate of twenty-five miles an hour. But, according to his testimony, the place where the train passed him was about four blocks, or twelve hundred feet,

north of the point where Holland was killed, while Rehard, the fireman, testified that the train came almost, if not quite, to a stand-still at Oak street, which was three hundred feet north of Cedar street and nine hundred feet south of Sycamore street, waiting for the train ahead to take water. Witness Hahn said that he did not think the train stopped after passing him and before striking Holland; but in answer to a question put to him by the court, he said, ''No, I won't say whether it made a stop or not.'' This testimony does not contradict the direct and positive testimony of Rehard that the train almost stopped at Oak street, and was running from thence on to Cedar at a rate of speed not exceeding four or five miles an hour. Hahn further testified that he heard the danger signal, which consisted of three or four short, quick blasts of the whistle, that he paid but little attention to the first blast, but started to turn round when he heard the second, and before the last was sounded he had turned completely around, facing south, the direction in which the train had gone, that by that time the train had about come to a complete stop, and that it was not more than one or two seconds from the time he heard the first blast of the whistle until the train had stopped. Even if the train was running at the rate of twenty-five miles an hour when it passed Hahn at Fifth and Sycamore streets, that was not the proximate cause of the injury, because, according to the testimony of Rehard, it was not moving faster than four or five miles an hour, or about as fast as an ordinary man would walk, at the time it struck Holland. The train was stopped, according to Rehard's testimony, within a distance of twenty-five to thirty feet after deceased was struck, or about the distance covered by one and one-half revolutions of the drive-wheel of the engine, which would have been an impossibility if the

train had been running faster than five miles an hour at the time.

It is, however, said for plaintiff that witness Re-hard was still in the defendant's employ at the time of the trial, that he was to blame for the death of the deceased, and that plaintiff is not bound by all of his statements even if he was her witness, as there was other evidence which contradicted him.

Mr. Greenleaf says: "It is exceedingly clear that the party calling a witness is not precluded from prov-ing the truth of any particular fact by any other com-petent testimony in direct contradiction to what such witness may have testified." [1 Greenleaf on Ev. (16 Ed.), sec. 443b.] But this does not help plaintiff's case, because, when properly analyzed, there is no ma-terial conflict between the testimony of Rehard and Hahn.

As to whether or not the bell was ringing at the time of the accident, counsel for plaintiff concede in their brief that that is a matter of no importance, as they asked for no instruction upon that point. They con-cede that Holland knew of the presence of the train on the west track, but assert that he could not know that it was going to take the cross-over track; that the headlight, though he saw it, would not notify him that the train was coming on the cross-over track, and that if he stepped toward the west and got on the west track, and the train continued down that track and struck him, he would have been negligent, as that was the main track. Allowing these things to be true, they do not tend to show that the defendant was negligent in the operation of its train at the time of the accident, nor would such conditions justify the deceased in going upon the track so near in front of an approaching train as to endanger his safety. The defendant owed the deceased no other or greater duty than to exercise ordinary care and caution in looking out for and avoid-

ing injuring him, or any other person who might be on the track. It has been said that a railroad track is of itself a signal of danger; but notwithstanding this, and the knowledge of the deceased that the train was upon the west track, which was straight and level for four or five blocks north of the point where the injury occurred, with no obstruction on the track between Holland and the engine, whose brilliant headlight, in the language of a witness, "made it as bright as day," and which he must have seen, he left a place of safety and stepped in front of the approaching train, was struck by the engine and killed. He was warned both by the headlight and the whistle of the near approach of the train, and had he remained where he was at the time of the first whistle, or made a step to the left, he would have avoided the collision. If the glare of the headlight blinded and confused him, as claimed by plaintiff, so that he did not know which way to move, it was his misfortune and not negligence of the defendant company. He had worked in those yards for six months some years before the accident, lived but a short distance from where the accident occurred, and must have been familiar with the location of the tracks at this point. All of defendant's passenger trains going south made this cross-over, that is, crossed over from the west to the east track, which deceased must also have known.

The fireman testified (and there is no evidence to the contrary) that when he first saw the deceased he was between the west track and the cross-over track, coming north, and that he was there and when he last saw him in no danger at all, and that the engineer, as soon as he discovered deceased in a place of danger, sounded the alarm whistle three or four times in rapid succession, put on the emergency brake, and did everything that he could do to stop the train in the shortest possible time.

It is ruled in Harlan v. Railroad, 64 Mo. 480, that every person who goes on a railroad track, or purposes to cross it, must use his eyes and ears to avoid injury, and that every intelligent person who has arrived at years of discretion is presumed to know that it is dangerous to be on a railroad track when trains are passing to and fro, and when crossing one is expected to be vigilant and watchful of the approach of a locomotive. Failure to exercise such vigilance is negligence *per se*. These familiar principles have been many times announced by this court. [Taylor v. Railroad, 86 Mo. 457; Prewitt v. Eddy, 115 Mo. 283; Baker v. Railroad, 122 Mo. 533; Lane v. Railroad, 132 Mo. 4; Schmidt v. Railroad, 191 Mo. 215.]

Plaintiff, however, says that John Holland had the right to presume that defendant's train would not be run at a greater rate of speed than five miles an hour, and to act upon such presumption until he knew, or by the exercise of ordinary care ought to have known, to the contrary. The only evidence with respect to the speed of the train at the time of the accident was the testimony of the fireman, and, as stated before, he testified that the train was not then running at a rate of speed exceeding five miles an hour. In all of the cases relied upon by plaintiff as supporting her contention, namely, Hutchinson v. Railroad, 161 Mo. 246; Eckhard v. Railroad, 190 Mo. 593; Riska v. Railroad, 180 Mo. 168; Weller v. Railroad, 164 Mo. 180, there was evidence tending to show that the train was running at a rate of speed in excess of that fixed by ordinance, or there was a failure to observe the requirements of the ordinance in some other respect. But even if the train in question was running at the time of the accident at a rate of speed in excess of that prescribed by the city ordinance (which we do not concede), and the defendant was, therefore, guilty of negligence *per se,* the conduct of the deceased in going upon the track

in proximity to the approaching train was contributory negligence on his part, which negligence was the proximate cause of the injury.

In Schmidt v. Railroad, supra, it is said: "The rule of contributory negligence is not changed or abrogated by reason of a statute or ordinance imposing the duty on account of the violation of which the injury resulted. [Weller v. Railroad, 120 Mo. 653.] The statute does not absolve persons approaching a public railway crossing from exercising common prudence to avoid danger, nor shift the responsibility to another should injury ensue from the failure, to exercise it. [Kenney v. Railroad, 105 Mo. 284.]" The same rule is announced in the following cases: Boyd v. Railroad, 105 Mo. 381; Sweeney v. Railroad, 150 Mo. 396; Moore v. Railroad, 176 Mo. 546; Evans v. Railroad, 178 Mo. 508; Ries v. Railroad, 179 Mo. 1.

There is no escaping the conclusion that the deceased saw the approaching train. He must, therefore, have been absorbed in other matters, or have misjudged the speed of the train and determined to take the risk of being caught by it before he could cross the track. But, whatever may have induced his action, his conduct can only be characterized as the grossest recklessness. The demurrer interposed by the defendant to the evidence should have been sustained.

The judgment is reversed. All concur.