DOLORES CONNOR, by Next Friend, Respondent, v.
WABASH RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, June 14, 1910.

1. RAILROADS: Crossing: Rights of Persons. Persons driving
on a highway across a railroad and the railroad company have
an equal right to pass over the crossing.

2. ———: ———: ———: Presumption that Speed Regulations
are Observed. Persons driving over a railroad crossing have
the right to assume that the railroad company's locomotive
will not approach at a speed exceeding that limited by an or-
dinance, and that, as it approaches, the statute requiring sig-
nals by ringing the bell or sounding the whistle will be ob-
served.

3. ———: ———: ———: Necessity of Looking and Listening.
Railroad tracks in and of themselves suggest danger, and
every one having reached the age of reasonable discretion is
presumed to know this fact, and the law therefore enjoins the
duty upon one approaching a crossing to exercise ordinary
care by looking and listening for approaching trains.

4. ———: ———: ———: Children: Care Required. While the
law makes allowance for the rashness of youth, it neverthe-
less requires the exercise of due care by an intelligent person
between fourteen and fifteen years of age, who knows and
understands the danger of going upon a railroad track at a
crossing.

5. ———: ———: **View Obstructed: Care Required.** Where one approaches the crossing of a railroad and the view is obstructed, ordinary care must be exercised in approaching the track after passing the obstruction, so as to acquire such information as to the approach of trains as an ordinarily prudent person should have before going on the crossing.

6. ———: **Injury at Crossing: Presumption that Speed Regulations Were Being Observed: Contributory Negligence, Question for Jury: Facts Stated.** Where persons, on approaching a crossing, stopped and looked and listened for the approach of a train at a point where the view was obstructed, but was sufficient to see the track for a considerable distance, and neither heard nor saw a locomotive approaching, they had a right to assume that the railroad company was exercising due care and not running its locomotive faster than the law allowed, and if after passing such obstruction, they drove forward to a point where they had a clear view of so much of the track as was sufficient to reveal no imminent danger, had defendant been running its train at the lawful rate of eight miles per hour, and looked and listened at this point and neither saw nor heard an engine, which was approaching at a rate from four to seven miles an hour in excess of the ordinance speed, the negligence of such persons, in an action for personal injuries resulting from a collision with the engine, was a question for the jury.

7. **NEGLIGENCE: Imputed Negligence: Driver of Carriage Not in Plaintiff's Employ.** In an action against a railroad company for personal injuries received in a collision at a crossing between a locomotive and a carriage, where the driver was not plaintiff's servant, nor under her control in any manner, even if he was negligent, his conduct could not be imputed to plaintiff, unless she was remiss in her duty through trusting to him and omitted to take reasonable care for her own safety.

8. **PLEADING: Petition: Improper Joinder of Causes: Waiver of Election.** Where a petition improperly joined several causes of action in one count which would be proper if in separate counts, and defendant's motion to require plaintiff to elect was denied, by answering, he waived the matter of election raised in the motion.

9. **RAILROADS: Injury at Crossing: Failure to Sound Whistle or Ring Bell: Instruction.** In an action against a railroad company for personal injuries received in a collision at a crossing between a locomotive and a carriage, an instruction that it was the duty of the railroad company either to sound the whistle or ring the bell, and if the jury believed it failed to ring the bell and also failed to sound the whistle, they should find for plaintiff, followed by an instruction that the defendant was

not required to sound the whistle and ring the bell also, but if it did either it discharged the duty imposed by statute, etc., was not objectionable, as giving the jury to understand that it was the duty of defendant to both ring the bell and sound the whistle while the locomotive was approaching the crossing.

10. **TRIAL PRACTICE: Showing Exhibits to Jury Before Identification: Harmless Error.** Counsel have the right to bring their exhibits into the court room in order to have them available to introduce at the trial, and though it may be well enough to exclude them until the witness is put upon the stand to make the necessary identification, where this is afterwards done no harm could result from the fact that they were seen by the jury before they were identified.

11. ————: **Conduct of Counsel: Facial Expression.** If the facial expression or other demeanor of counsel is objectionable and a reprimand by the court is requested and denied, the matter would be open for review on appeal; but where the court was not even requested to interpose a reprimand it is to be presumed nothing objectionable occurred.

12. **EVIDENCE: Identification of Exhibits.** A witness had picked up certain weeds at a spot where a crossing accident had occurred, which weeds were claimed to have obstructed the view of the track, tied a string around them, and attached a card on which he wrote his name. When they were exhibited to him at the trial, he recited the facts as to gathering them, and testified that they appeared to be the same weeds; that he recognized his handwriting on the card attached and believed they were the same he had assembled with the string. *Held*, that though it did not appear that the witness had retained custody of the weeds, there was a sufficient identification, prima facie, to warrant their admission in evidence.

13. **DAMAGES: Excessive Verdict: Twelve Hundred and Fifty Dollars Held Not to be Excessive.** In an action against a railroad company for personal injuries in a collision between a locomotive and a carriage at a crossing, where plaintiff, a girl between fourteen and fifteen years old, received a gash to the bone on the side of her head and was rendered unconscious and confined to her bed for at least two weeks under a doctor's care, and though no bones were broken and she was not permanently injured, yet her injuries were severe and it would require at least a year for her nervous system to be restored to what it was before the injury, and she suffered great pain and was not able to attend school for many months, a verdict for twelve hundred and fifty dollars was not excessive.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett*, Judge.

AFFIRMED.

＊

*J. L. Minnis, Robertson & Robertson* for appellant.

(1)   Under the evidence of plaintiff her own contributory negligence was the proximate cause of her injury, and the court erred in refusing to direct a verdict for the defendant, both at the close of the plaintiff's evidence and at the close of all of the evidence.   Boyd v. Railroad, 105 Mo. 391; Spillane v. Railroad, 135 Mo. 424; Hutchison v. Railroad, 161 Mo. 254; Mockowick v. Railroad, 196 Mo. 550; Walker v. Railroad, 193 Mo. 453; Green v. Railroad, 192 Mo. 131; Schmidt v. Railroad, 191 Mo. 215; Stotler v. Railroad, 204 Mo. 619; Holland v. Railroad, 210 Mo. 338; McNamara v. Railroad, 126 Mo. App. 152.   The credible evidence in this case shows that the surrey was driven upon the crossing immediately in front of an approaching engine without the plaintiff stopping to look or listen before going upon the track. Not only is this true as to the credible evidence in the case, but it is established by the plaintiff's own testimony, for had she looked she would have seen and if she looked she saw.   Lane v. Railroad, 132 Mo. 4; Payne v. Railroad, 136 Mo. 562; Kelsay v. Railroad, 129 Mo. 362.
(2)   Plaintiff's instruction number one which told the jury that if the defendant failed to ring the bell "and also failed to sound the whistle and that such failure was the direct cause of plaintiff's injury, then the defendant is liable" contradicts itself, is contrary to defendant's instruction number two given, and is contrary to the statute, sec. 1102, R. S. 1899.   Plaintiff's instruction number four again puts the duty upon the defendant to sound the whistle as well as to ring the bell.   The

hypotheses submitted to the jury in both instructions requires the sounding of the whistle, while the statute in cities requires only the ringing of the bell. The statute does not impose the alternative to sound the whistle or ring the bell. It requires only the ringing of the bell. Coffin v. Railroad, 22 Mo. App. 601; Kennayde v. Railroad, 45 Mo. 255, 261. But the statute can not apply in this case as to the ringing of the bell as eighty rods would place the engine east of Missouri avenue, or the crossing at the ice house, and the instruction required an impossibility as to ringing of the bell. Lamb v. Railroad, 147 Mo. 171. (3) The action of plaintiff's counsel in bringing the bundle of weeds into the courtroom and exhibiting them to the jury was misconduct and calculated to prejudice the jury against the defendant. Underhill on Evidence, sec. 142; Thompson on Trials, sec. 825, 963; Levels v. Railroad, 196 Mo. 606. (4) Plaintiff's instruction No. 3, attempting to excuse the plaintiff from her own negligence, was error and is contrary to the law as expressed in the Fechley case. There was no evidence in the case upon which to base this instruction, for instead of showing that she relied upon the driver, it shows that she relied upon herself. Elliott on Railroads (2 Ed.), sec. 1174; Fechley v. Traction Co., 119 Mo. App. 358. (5) The court erred in giving plaintiff's instructions using the words "negligence" and "contributory negligence," without defining them to the jury. Magrane v. Railroad, 183 Mo. 119. While it is not necessary under all circumstances to define these words, (Landrum v. Railroad, 132 Mo. App. 717) it is required if the instruction does not set out the facts constituting the negligence or contributory negligence. Magrane v. Railroad, supra. Plaintiff's numbers 1, 2, and 3 used these terms without submitting the facts constituting the negligence or contributory negligence. (6) The verdict is excessive.

*D. A. Murphy* and *P. H. Cullen* for respondent.

(1)   No such judicial legislation has been attempted as to lay down the hard and fast rule that the traveler approached a railway crossing is bound under all circumstances to stop as well as to look and listen for approaching trains; but the courts generally agree that whether he ought to stop, in the exercise of ordinary care and caution, is a question for a jury, depending upon the circumstances in each particular case.   But in this case the proof is overwhelming that a stop was made.   Elliott v. Railroad, 105 Mo. App. 523; Frank v. Transit Co., 99 Mo. App. 323; Huckshold v. Railroad, 90 Mo. 548; Donohue v. Railroad, 91 Mo. 357; Mayes v. Railroad, 71 Mo. App. 142; Petty v. Railroad, 88 Mo. 318; Johnson v. Railroad, 77 Mo. 546; Russell v. Receivers, 70 Mo. App. 88; Baker v. Railroad, 122 Mo. 533; Kelly v. Railroad, 88 Mo. 534; O'Connor v. Railroad, 94 Mo.— (2) While the occupant of a vehicle, controlled by another, is not absolved from all care at railway crossings the law does not impose upon the occupant the same degree of care imposed on the driver.   The situation of the occupant is different from the situation of the driver.   One is active, the other passive.   The occupant has a right to presume that neither the company or the driver will be negligent and it is only when the contrary appears that the law imposes upon the occupant active diligence.   Stotler v. Railroad, 200 Mo. 107; Howe v. Railroad, 30 L. R. A. 684, 62 Minn. 71; Marsh v. Railroad, 104 Mo. App. 587; Railroad v. Eadie, 43 Ohio 91; Gibson v. Railroad, 83 S. W. (Tex.) 854; Railroad v. Gibson, 91 Tex. 52, 40 S. W. 956; Dyer v. Railroad, 71 N. Y. 228; Crawford v. Railroad, 22 Jones & S. 262; Hoag v. Railroad, 18 N. Y. (N. E.) 648; State v. Railroad, 15 Atl. (Me.) 39; Lapsley v. Railroad, 50 Fed. Rep. 172; Baltimore v. Railroad, 29 Atl. (Md.) 518; Railroad v. Steinbrenner (N. J. L.) 54 Am. Rep. 127; O'Toole v. Railroad, 158 Pa. 99, 22 L. R. A. 607.   (3)   The doctrine of imputable neg-

ligence does not obtain in this State, hence the negligence, if any, of the driver cannot be imputed to the child. Stotler v. Railroad, 200 Mo. 107; Sluder v. Transit Co., 189 Mo. 107; Profit v. Railroad, 91 Mo. App. 369; Marsh v. Railroad, 104 Mo. App. 577; Baxter v. Transit Co., 103 Mo. App. 597; Becke v. Railroad, 102 Mo. 544; Munger v. Sedalia, 66 Mo. App. 629; Orourke v. Railroad, 147 Mo. 352; Bailey v. Railroad, 152 Mo. 1. c. 462; Johnson v. City of St. Joe, 96 Mo. App. 1. c. 671; Keitel v. Cable Co., 28 Mo. App. 657; Duvall v. Railroad, 65 L. R. A. 722. (4) The defendant's criticism of instructions one and two, based upon the proposition that they require the jury to find that the trainmen failed to sound the whistle or to ring the bell is frivolous. The instructions hypothecates no such state of facts. It requires a jury to find that defendant railroad company and its agents and servants failed to ring the bell and the instruction requires the jury to find that the failure to give signal was the direct cause of the accident. The instructions given in this case are identical with the instructions given in the Stotler case and these instructions were expressly approved over exceptions and attack in brief and read in connection with defendant's instruction they could not possibly mislead any jury. Stotler v. Railroad, 200 Mo. 107. (5) The assignments of negligence were not inconsistent and the motion to elect was without merit. White v. Railroad, 202, 539; McCarty v. Rood Hotel Co., 144 Mo. 402; Riska v. Railroad, 180 Mo. 183; Clancy v. Railroad, 192 Mo. 641; Moore v. Railroad, 194 Mo. 13; Moore v. Railroad, 194 Mo. 1; Latson v. Railroad, 192 Mo. 449.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of defendant's negligence. Plaintiff recovered and defendant appeals.

Plaintiff was injured through the collision of defendant's locomotive engine with a surrey in which she was riding while in the act of crossing defendant's

tracks. The scene of the accident is the crossing of Morris street, a public thoroughfare, within the corporate limits of the city of Mexico and at a point where defendant's tracks are unfenced. To a complete understanding of the case, it will be necessary to mention that both the Chicago & Alton Railroad Co. and the defendant, The Wabash Railroad Co., maintain tracks on their rights of way adjoining through the city of Mexico. Both of these roads pass through that city from east to west and as we infer from the testimony, the right of way of each adjoins the other, especially about the point of collision involved here. Morris street, which is a public thoroughfare of that city, forty feet in width, runs north and south and crosses the tracks of each of these railroads. At the point where plaintiff was injured, the distance between the tracks, that is between the north rail of defendant's track and the south rail of the Chicago & Alton tracks is ninety-nine feet. In constructing the two railroads a considerable quantity of the surface was excavated where each track now rests and an embankment was made with the surplus earth on the strip of land lying between the two roads. This embankment is about nine and one-half feet above the level of Morris street at the highest point between the two railroads and obstructs the view of one passing south on Morris street to the crossing of the Wabash tracks. Furthermore, at the time of plaintiff's injury, which was July 2d, an extensive growth of weeds was upon this embankment and on the south side thereof on the right of way of the Wabash track to within ten feet of its north rail. Some of the witnesses say these weeds were two and one-half feet in height. There is other testimony in the record to the effect that they were as much as six feet in height and it appears they obstructed the view of the railroad to the eastward from plaintiff and her companions in the surrey.

At the time of her injury, plaintiff was a young girl between fourteen and fifteen years of age. She was

in company with three others in an open surrey, drawn by one horse which was being driven in a walk to the southward on Morris street. A boy by the name of Raymond Moore was driving the surrey. He was seated, of course, on the front seat of the vehicle and on the right hand or west side of the surrey as it progressed southward. Plaintiff was seated with him on the east side of the front seat, or toward the direction from which the locomotive approached. Two other young ladies were seated on the rear seat of the surrey. It was about midday and the party drove leisurely along on Morris street, descended to the crossing of the Chicago & Alton tracks, which are ninety-nine feet north of those of defendant, to a point about half way between the two roads when the driver stopped the surrey and he and plaintiff and the others looked and listened for the approach of a locomotive from either direction on the tracks of defendant company. It seems the high embankment of earth overgrown with weeds between the two railroads immediately east of Morris street completely obstructed the view of all of those in the surrey to the eastward and they heard no sound of the approaching locomotive. After thus stopping, looking and listening, the driver drove the horse forward in an ordinary walk until within fifteen feet of the north rail of the Wabash track when both he and plaintiff leaned forward over the dashboard and looked and listened the second time for the possible approach of trains. The testimony is that the luxuriant growth of high weeds on defendant's right of way extended to within ten feet of the north rail of its track and while the party could see down the track from the point at which they leaned over the dashboard for quite a distance the view was obscured for any considerable extent. No stop was made by the surrey at this point, fifteen feet north of the track, as no danger appeared and the track seemed clear. The horse continued on at a walk and as it went upon the track defendant's locomotive engine, single and alone, without

cars or train attached, suddenly emerged from the eastward at a rate of speed from twelve to fifteen miles an hour and collided with the forward wheels of the carriage. The result of this collision inflicted serious and painful injuries upon plaintiff and the driver as well.

The allegations of negligence preferred in the petition are three in number. An ordinance of the city of Mexico requiring railroads to operate their trains on all unfenced portions of their tracks within the corporate limits of that city at a rate of speed not exceeding eight miles per hour is pleaded and relied upon as one of the grounds of recovery. It is averred defendant was negligent with respect to the duty thus enjoined upon it in that it operated its locomotive engine at a high and dangerous rate of speed in excess of eight miles per hour as provided in the ordinance.

Another allegation of negligence proceeds on our statute which requires railroad companies to either sound the whistle or ring the bell on their locomotives when approaching any crossing. It is averred that defendant, unmindful of the duty thus enjoined, negligently operated its locomotive engine without either sounding the whistle or ringing the bell and neglected to keep the same ringing or sounding until it had passed the crossing.

The other assignment of negligence proceeds for a breach of duty imposed at common law as for a failure to stop. This assignment of negligence, however, was withdrawn from the consideration of the jury entirely and for that reason it will not be further mentioned.

The ordinance pleaded was introduced in evidence and from it it appears to denounce as a misdemeanor the act of any locomotive engineer or other servants or agents of a railroad company in operating a locomotive through any unfenced portion of the city at a rate of speed in excess of eight miles per hour. It is in evidence from several witnesses that the locomotive in question was being operated at a speed of from twelve to fifteen

miles per hour at the time the injury was inflicted. Indeed, defendant's engineer himself, a witness for it, conceded this fact to be true. Several witnesses for plaintiff testified that neither the whistle nor the bell on the locomotive were sounded at any time as it approached the crossing. Other witnesses for defendant gave testimony contrary to this and said that though the whistle was not sounded the bell was constantly ringing until the crossing was reached. However, there is an abundance of testimony on this assignment to support a finding of the jury either way on the question.

It is earnestly argued the court should have directed a verdict for defendant on the theory that though it was negligent in the premises plaintiff was guilty of contributory negligence in going upon the track immediately in front of a passing locomotive. Of course, this argument must be considered with reference to the particular circumstances of the case. Plaintiff, her companions and defendant had an equal right to pass over the crossing of the public highway and railroad. Plaintiff and those with her had the right as well to assume that defendant would operate its locomotive engine in accordance with the ordinance and statute pleaded. [Deitring v. St. Louis Transit Co., 109 Mo. App. 524, 85 S. W. 140.] Such was the duty laid upon defendant by positive statutory law. In this view, those in the surrey had the right to assume that defendant's locomotive engine would not approach the track at a rate of speed exceeding eight miles per hour and that, as it approached, the statute requiring signals by ringing of the bell or sounding of the whistle would be observed. Both of these duties were violated by defendant. It appears plaintiff and the driver of the carriage exercised the care of an ordinarily prudent person by stopping the surrey at a point about fifty feet north of the Wabash track and listening for an approaching train. No sound indicating such fact was heard. But in this connection, it is argued that had plaintiff listened she must have heard

the sound. It must be remembered, however, in connection with this argument that the locomotive which collided with the surrey was single and alone on the tracks without cars attached. The railroad appears to be a level track and it is obvious no considerable noises would be emitted by a single locomotive approaching in those circumstances, for it would likely glide along without heavy puffing or pulling. That the view of the parties was entirely obscured at this point is beyond question, for besides the high embankment of nine and one-half feet thrown up immediately north of the Wabash track and south of the Chicago & Alton track, adjacent to Morris street on the east, at the point where the surrey stopped, there was a growth of weeds to such height as to obscure all view to the eastward. From this point, where the surrey stopped, Morris street declines gradually to the Wabash tracks. The evidence indicates that the earth is cut away down to the crossing of the railroad. As the surrey approached the tracks on this incline, the view continued to be obscured by the growth of weeds, which some of the testimony shows were six feet high to within ten feet of the rail. Of course, when we consider the embankment encumbered by this growth of weeds, it is clear enough that those in the surrey, even though their means of vision was elevated five feet above the earth, could not see the engine. Immediately prior to going upon the track, within about fifteen feet of the north rail, plaintiff and the driver of the surrey both leaned forward over the dashboard and looked a second time to the eastward to ascertain an approaching train if any there were. There can be no doubt of the proposition that railroad tracks in and of themselves suggest danger and every one having reached the years of reasonable discretion is presumed to know this fact. The law, therefore, enjoins the duty upon one approaching a crossing to exercise ordinary care by looking and listening for approaching trains. [Holland v. Missouri Pac. R. Co., 210 Mo. 338,

109 S. W. 19; Dey v. United Rys. Co. of St. Louis, 140
Mo. App. 461, 120 S. W. 134.] It may be conceded, too,
that while the law makes allowances for the rashness
of youth, it nevertheless requires the exercise of due
care by an intelligent person of plaintiff's age who
knows and understands the danger attending such an
act as going upon a railroad. [Herdt v. Koenig, 137
Mo. App. 589, 119 S. W. 56.] It is also true that if
one approaches the crossing of a railroad and the view
is obscured, ordinary care must be exercised in approach-
ing the track after passing the obstruction to the end of
acquiring such information as to the approach of trains
as an ordinarily prudent person should have before go-
ing on the crossing. [Dey v. United Rys. Co. of St.
Louis, 140 Mo. App. 461, 120 S. W. 134; Rissler v. St.
Louis Transit Co., 113 Mo. App. 120, 87 S. W. 578; Har-
lan v. St. Louis, K. C. & No. R. Co., 64 Mo. 480; Schmidt
v. Missouri Pac. R. Co., 191 Mo. 215, 90 S. W. 136, 3 L. R.
A. (N. S.) 196; Laun v. St. L. & S. F. R. Co., 216 Mo.
563, 116 S. W. 553; Holland v. Missouri Pac. R. Co., 210
Mo. 338, 109 S. W. 19.] But it appears here the plaintiff
acted the part of ordinary prudence even as though she
were *sui juris,* for after having failed to discern dan-
ger from the top of the embankment where the surrey
was stopped, both she and the driver leaned forward and
looked and listened a second time within fifteen feet
of the rail. At this point the view was also obscured to
some extent but nevertheless it appears their range of
vision on the track eastward was sufficient for the pur-
poses of the case, for they neither heard nor saw the
locomotive, and they had a right to treat with the situa-
tion as though defendant was exercising due care on its
part. In other words, the requirement of ordinary care
on the part of plaintiff does not enjoin the duty upon
her of anticipating the negligence of defendant in operat-
ing its engine unlawfully. After the obstruction was
passed and the second view of the track made, if the lo-
comotive was not to be seen within a reasonable distance

of the crossing so as to threaten danger while running at the rate of eight miles per hour, plaintiff cannot be said to be negligent for failing to anticipate the result from one approaching at the rate of four to seven miles in excess of the ordinance speed. [Mitchell v. C. & A. R. Co., 132 Mo. App. 143, 112 S. W. 291; Doss v. M. K. & T. R. Co., 135 Mo. App. 643, 116 S. W. 458.] It seems that an ordinarily prudent person could have done no more and we have no doubt that had defendant's locomotive been either running at eight miles an hour or sounding the bell or whistle, as it should have done, the injury would not have occurred, for the evidence is that when the parties looked and listened the second time they had a clear view of so much of the track as was sufficient to reveal no imminent danger had defendant not been remiss in its duty. It must be remembered, too, in this connection, there were four persons in this surrey and that the instinct of self-preservation which resides in every individual consciousness is a considerable element in the case on this particular question; for it appears to be almost, if not quite, certain that at least some one of these parties would have discerned some danger, if it were reasonably possible to do so, and all say they did not. It is entirely clear that as to plaintiff the question of contributory negligence was for the jury. [Stotler v. C. & A. R. Co., 200 Mo. 107, 98 S. W. 509; Elliott v. C. & A. R. Co., 105 Mo. App. 523, 80 S. W. 270.]

But it is argued though plaintiff herself acted with reasonable care in the premises, the driver did not and that his omission of duty for the safety of plaintiff and others should be imputed to her. The question as to the negligence of young Moore, the driver, was not particularly developed on the trial but it appears that he, too, looked and listened for danger a second time after the obstruction was passed and no danger appeared though a reasonably sufficient portion of the track was viewed. However, as to the question of the driver's negligence, it is entirely clear that if his conduct were negligent

at all, it was not sufficiently so to affect the rights of the present plaintiff. The driver was not her servant nor was he in any manner under her control and in those circumstances, even if he were negligent, his conduct could not be imputed to plaintiff unless it appears that she was remiss in her duty through trusting to him and omitted to take reasonable care for her own safety. [Fechley v. Springfield Traction Co., 119 Mo. App. 358, 96 S. W. 421; Stotler v. C. & A. R. Co., 200 Mo. 107, 144, 98 S. W. 509; Sluder v. St. Louis Transit Co., 189 Mo. 107, 88 S. W. 648.] The evidence tends to prove that plaintiff's conduct was at least that of an ordinarily prudent person for her own safety in the circumstances of the case and it was for the jury to say whether a recovery should be denied as for contributory negligence.

As before stated, the petition set forth three specific acts of negligence, one relating to the violation of the speed ordinance, one relating to the violation of the statute of the state with respect to requiring locomotive engineers to sound the whistle or ring the bell and the third with respect to a violation of defendant's common law duty as for a failure to stop. The latter assignment was withdrawn at the trial but before this was done defendant moved the court to require plaintiff to elect on which assignment of negligence she would stand, for they were all included in one count of the petition. It would have been better, no doubt, had the several assignments been separately counted on. They were nevertheless all included in one count when defendant moved an election on the part of plaintiff. This motion was overruled and it is argued here the court erred in so doing. It will be unnecessary to inquire as to whether or not the court erred in overruling the motion to elect; for it appears that after the motion was overruled defendant filed its answer and proceeded with the trial throughout. At the utmost, the criticism leveled against

149 App—44

the petition is that it improperly commingled several causes of action in one count, which were proper enough if in separate counts of the same petition. It is the established law that such defects in a plaintiff's petition may be waived by the defendant if it chooses to do so. It is thoroughly settled in our jurisprudence that though a party move to elect, as in this case, if he thereafter answers the petition, the fact will be regarded and treated as a waiver of the matter of election raised in the motion. [Aley v. Missouri Pac. R. Co., 211 Mo. 460, 481, 111 S. W. 102.]

An argument is directed against the instructions for plaintiff. There are numerous instructions in the case and it is useless to encumber the opinion by setting them out. We have examined them with care and they seem to be unexceptional, indeed. The principal argument directed against those for plaintiff is to the effect that by her first instruction, the jury were given to understand that it was the duty of defendant to both ring the bell and sound the whistle while the locomotive was approaching the crossing, whereas, either one of these signals is sufficient under the law. The instruction is certainly free from this criticism, for it first clearly defines the duty of defendant touching this matter. It informs the jury that it is made the duty of the railroad company either to sound the whistle or ring the bell. In a subsequent portion thereof, the jury was informed that if it believed defendant failed to ring the bell and also failed to sound the whistle, as theretofore mentioned, the finding should be for plaintiff under other circumstances referred to. This was proper, for by doing either, defendant would have discharged its duty and it was incumbent on the jury to find it had omitted both. When read all together, it is clear enough that the jury were given to understand no recovery could be allowed on this score unless defendant omitted to both ring the bell and sound the whistle and that it should be acquitted if it did either. Then, too, this instruction

must be considered together with one further explanatory of the matter given for plaintiff as its No. 4, which is as follows:

"The court further instructs the jury that the defendant railroad company and its agents are not required to sound the whistle while running inside of cities, and that it is not required to sound the whistle and ring the bell also; but if it does either it discharges the duty imposed upon it by the statute, and if in this case you find that the defendant either rang the bell or sounded the whistle, as explained and defined in plaintiff's No. 1 instruction, you cannot find for plaintiff on her said instruction."

In this instruction there is a clear direction to the effect that defendant discharged its duty by either ringing the bell or sounding the whistle and, indeed, instruction No. 1 complained of is pointedly explained therein by reference to it. The argument directed against plaintiff's instruction should be overruled. Those given for defendant presented every phase of the law to the jury from its position upon facts hypothesized from different viewpoints and those refused were properly rejected because some of them were unsound in doctrine and others were sufficiently covered by those given.

An argument is directed against the conduct of plaintiff's counsel in exhibiting a bundle of weeds in the presence of the jury before they had been identified by the witness and further in thereafter permitting these weeds to be introduced in evidence because it is said they were insufficiently identified by the witness. It appears the county surveyor made some measurements and observations about the track some two or three days after the injury, at the instance of plaintiff's counsel, and while there he picked up a number of the tall weeds which had been cut down the day following the accident on the side of defendant's right of way, the same weeds which tended to obstruct the view of those in the sur-

rey.  While this witness was under cross-examination by defendant's counsel, and before the bundle of weeds referred to had been identified, it appears some one laid the bundle of weeds, apparently wrapped up, upon the counsel table in the presence of the jury.  Defendant's counsel who was then cross-examining the witness as to his observation of the weeds, which had been cut down at the point of injury, inquired what the bundle on the table contained.  Plaintiff's counsel picked up the bundle with the remark, "Here they are.  Here are the weeds referred to."  And defendant's counsel immediately objected to the remark with the request that they be withdrawn from the courtroom.  The court sustained the objection and plaintiff's counsel inquired what he was to do with the weeds as he desired to have them identified and introduced in evidence.  The court remarked in substance that they were not competent at the time and until they had been identified the bundle should be withdrawn from the presence of the jury.  The direction of the court was immediately complied with.  It is now argued that plaintiff's counsel was guilty of misconduct in respect of this matter.  We are not impressed in the least with this argument, for from what appears in the record nothing unbecoming the most orderly conduct of a lawsuit occurred.  Counsel certainly have the right to bring their exhibits into the courtroom in order to have them available to introduce at the trial.  It may be well enough to exclude them until the witness is put upon the stand to make the necessary identification, but in this case that was afterwards done and no harm can result from the mere fact that they were seen by the jury before they were identified.  The court sustained all of the objections made by defendant's counsel touching this incident and required the weeds to be removed from the courtroom as it requested.  If, perchance, the facial expressions or other demeanor of counsel for plaintiff was objectionable, a reprimand by the court might have been

requested and if denied, the matter would be open for review here on exception, but nothing of this kind appears. If there were anything other than the most dignified conduct on the part of counsel for plaintiff, it does not appear in the record. Furthermore, it is to be presumed nothing objectionable occurred, for the court was not even requested to interpose a reprimand at the time.

But it is argued this bundle of weeds was afterwards permitted to be exhibited to the jury when they were not sufficiently identified by the witness. This argument is wholly without merit. It was in evidence that a day or two after plaintiff received her injury defendant caused the weeds to be mown and they were lying on the ground when the county surveyor made his observation and measurements at the instance of her counsel. He picked up a number of these weeds then lying upon the ground where they had been cut down, tied a string around the same and attached a card thereto. On this card he wrote his name. When the weeds were exhibited to him at the trial, he recited the facts as to gathering them up, etc., said they appeared to be the same weeds; that he recognized his handwriting on the card attached thereto and believed they were the same he had assembled with the string. Defendant argues that this is not a sufficient identification of the weeds to permit them to be shown in evidence as to their length and character for the reason it did not appear the witness had retained custody of them prior to the trial. We are not impressed with this argument. It was a sufficient identification prima facie for the jury at least. Jealous as is our law of the rights of the citizen, it permits an opinion of the witness to be given when founded on his personal knowledge as to the identification of persons and things, even in criminal cases when life or liberty is involved. [State v. Hopkirk, 84 Mo. 278; State v. Babb, 76 Mo. 501.]

The jury awarded plaintiff twelve hundred and fifty dollars damages, and it is argued this verdict is excessive. It appears, though no bones were broken, plaintiff suffered a severe wound, a gash to the bone on the side of her head; that she was rendered unconscious and confined to her bed for at least two weeks under the doctor's care. The physician testified she suffered a slight concussion of the brain and a severe nervous shock. Though she was not permanently injured, her injuries were severe and painful and it would require at least a year for her nervous condition to be reinstated to what it was before the injury. Plaintiff suffered great pain and was not able to attend school for many months thereafter. We believe the award of damages is moderate, and are not inclined to disturb it. After having carefully reviewed the entire record, no reversible error is discovered. Indeed, the case seems to have been well and carefully tried. The judgment should be affirmed. It is so ordered. All concur.